Lynn G. STARNS and Lynda J. Mack, Plaintiffs,

v.

Lester A. MALKERSON et al., Defendants.

No. 4–70 Civ. 26.

United States District Court, D. Minnesota. Fourth Division.

Sept. 22, 1970.

Warren E. Mack, Minneapolis, Minn., for plaintiffs; Lynn S. Castner, Minneapolis, Minn., of counsel.

R. Joel Tierney, Minneapolis, Minn., for defendants.

Before BRIGHT, Circuit Judge, NORDBYE, Senior District Judge, and LORD, District Judge.

MILES W. LORD, District Judge:

The Board of Regents of the University of Minnesota has promulgated a regulation which provides in part that, "No student is eligible for residence classification in the University * * * unless he has been a bona fide domiciliary of the state for at least a year immediately prior thereto." The effect of this regulation is to impose on any person moving into the State a one year durational residency requirement to qualify as a resident for tuition purposes at the University. This case raises the issue of whether the regulation is unconstitutional as violative of the Equal Protection Clause. For reasons which follow, we have concluded in the negative.

The plaintiffs married their husbands in 1968 while their husbands were enrolled in the School of Law of the University of Chicago. In June of 1969, plaintiffs moved to Minnesota with their husbands who had obtained employment in Minnesota. Neither plaintiffs nor their husbands claim residency in Minnesota for purposes of this action prior to June, 1969. Both plaintiffs enrolled as full-time students at the University for the 1969–1970 school year and were classified as nonresident students by the University. This meant that they were required to pay tuition in an amount more than double that they would have had to pay had they been classified as resident students. The classification of the plaintiffs as nonresident students was made pursuant to the Board of Regents' tuition regulations, printed on the University's "Application for Resident Classification", paragraph 1 of which provides:

No student is eligible for resident classification in the University, in any college thereof, unless he has been a bona fide domiciliary of the state for

at least a year immediately prior thereto. This requirement does not prejudice the right of a student admitted on a nonresident basis to be placed thereafter on a resident basis provided he has acquired a bona fide domicile of a year's duration within the state. Attendance at the University neither constitutes nor necessarily precludes the acquisition of such a domicile. For University purposes, a student does not acquire a domicile in Minnesota until he has been here for at least a year primarily as a permanent resident and not merely as a student; this involves the probability of his remaining in Minnesota beyond his completion of school.

Plaintiffs appealed from their nonresident classifications and on January 12, 1970, the Board of Review on Resident Status acted on their petitions and classified them as residents. Pursuant to the one-year waiting rule, however, the Board postponed the effectiveness of the classification for tuition purposes until the first summer session, 1970. The beginning of the first summer session, 1970, coincides with the first anniversary of plaintiffs' continuous presence in the State of Minnesota.

On January 23, 1970, plaintiffs instituted this action asserting federal jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, to redress the alleged deprivation of Federal Constitutional rights. Plaintiffs claim that the facts in this case establish that they are residents of the State of Minnesota, and that they have been so since June of 1969 when they first moved into the State. They claim that with their physical presence in the State plus their intention of making Minnesota their permanent home, they have established that they are bona fide domiciliaries of the State. This being true, plaintiffs contend that the regulation in question, by imposing a one-year durational residency requirement for tuition purposes at the University, creates two classes of residents: First, those who have resided within Minnesota for over one year; and second, those who have resided within Minnesota for less than one year. On the basis of this sole difference, those in the first class are required to pay resident tuition while those in the second class are required to pay nonresident tuition. Plaintiffs assert that this classification is unreasonable and violates the Equal Protection Clause. Plaintiffs further contend that the one-year waiting period discriminates among persons whose situation is otherwise identical, solely on the basis of the exercise of a constitutionally protected liberty. Plaintiffs seek an Order (1) declaring the regulation in question unconstitutional and void as violative of the Equal Protection Clause; (2) permanently enjoining the defendants from classifying them nonresidents; (3) classifying them residents for tuition purposes at the University; and (4) granting compensatory damages for the excess nonresident tuition fees paid during the 1969–1970 school year.

This three-judge court was convened pursuant to the provisions of 28 U.S.C. §§ 2281 and 2284 by the Chief Judge of the Eighth Circuit on April 29, 1970.

At the outset it is important to note what is *not* at issue in this case. Plaintiffs do not challenge the right of the University to charge nonresident students higher tuition than that paid by residents. This issue was raised in Johns v. Redeker, 406 F.2d 878 (8 Cir. 1969), and Clarke v. Redeker, 259 F. Supp. 117 (S.D.Iowa 1966), and the courts therein held that the distinction between residents and nonresidents for tuition purposes is reasonable and constitutional. See also, Landwehr v. Regents of University of Colorado, 156 Colo. 1, 396 P.2d 451 (1964); Bryant v. Regents of University of California, 188 Cal. 559, 205 P. 1071 (1922). Nor do the plaintiffs challenge the right of the University to use a durational residency test as a rebuttable presumption of nonresidency. This issue was likewise decided in Clarke v. Redeker, *supra*. The

sole issue here is whether it is constitutionally permissible for a state to create an irrebuttable presumption that any person who has not continuously resided in Minnesota for one year immediately before his entrance to the University is a nonresident for tuition purposes.

Our initial concern is to determine the standard we must apply in evaluating the classification made by the regulation. When the discrimination created by a statute or regulation infringes on a person's fundamental rights, the Supreme Court has said that it is not afforded the deference usually given to the judgment of state legislatures. See, e.g., Kramer v. Union Free School District No. 15, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). The test in such a case is not whether there is a "rational basis" for the distinctions made, but rather whether the distinctions are necessary to promote a "compelling state interest". Kramer v. Union Free School District No. 15, *supra*, 395 U.S. at 627–628, 89 S.Ct. 1886. On the other hand, when the classification does not affect a fundamental right, its constitutionality is to be judged on the basis of whether the distinctions drawn by the statute have some rational relation to a legitimate state interest. See, e.g., McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L. Ed. 369 (1911).

Plaintiffs assert that we are dealing here with the infringement of a basic, fundamental right—the right to interstate movement—and thus we must apply the "compelling state interest" test. Plaintiffs rely on Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), in which the Supreme Court declared unconstitutional state and the District of Columbia statutory provisions denying welfare assistance to residents who had not resided within their jurisdictions for at least one year immediately preceding their application for such assistance. In that case the Court held that the one-year waiting period for welfare assistance served to penalize the exercise of the constitutional right to travel and thus, unless the classification was shown to be necessary to promote a compelling governmental interest, it was unconstitutional. The plaintiffs argue here that, "The inescapable effect of the one-year residence requirement is to deter persons from moving into the state in order to establish a new residence * * * or, when the deterence was insufficient, to disadvantage them on account of their exercise of liberty of movement." Thus, they claim that the classification created by the regulation must also be shown to be necessary to promote a compelling governmental interest to be constitutionally permissible.

We believe that this case is distinguishable from *Shapiro* in two important respects. First, in *Shapiro* the Supreme Court found, based on weighty evidence, that the one-year waiting period for welfare assistance had as a specific objective the exclusion from the jurisdiction of the poor who needed or may need relief. Shapiro v. Thompson, *supra* at 628–629, 89 S.Ct. 1322. The Court stated that such a purpose could not serve as a "justification for the classification created by the one-year waiting period, since that purpose is constitutionally impermissible." *Id.* at 629, 89 S.Ct. at 1329.

Here, by contrast, there are no state of facts upon which this Court could posit, as a finding of fact, that the one-year waiting period for resident tuition purposes has as a specific objective excluding or even deterring out-of-state students from attending the University. The record indicates, in fact, that of the approximately 50,000 students enrolled in the University in the fall of 1968, over 6,000 were nonresidents. In view of these statistics, we believe that the one-year waiting period does not deter any appreciable number of persons from

moving into the state. There is no basis in the record to conclude, therefore, that the operation of the one-year waiting period has an unconstitutional "chilling effect" on the assertion of the constitutional right to travel.

■ Second, in *Shapiro* the one-year waiting period for welfare assistance had the effect of denying the basic necessities of life to needy residents. Thus, the deterring effect on interstate movement by the use of the residency requirement was readily apparent. As stated by the Supreme Court,

> An indigent who desires to migrate, resettle, find a new job, start a new life will doubtless hesitate if he knows that he must risk making the moving without the possibility of falling back on state welfare assistance during his first year of residence, when his need may be most acute. Shapiro v. Thompson, *supra* at 629, 89 S.Ct. at 1328.

There is no showing here that the one-year waiting period has any dire effects on the nonresident student equivalent to those noted in *Shapiro*. There is less likelihood, therefore, that the one-year waiting period to acquire resident status for tuition purposes would make a person hesitate when deciding to establish residency in Minnesota and to apply to the University. In this respect, we concur in the reasoning of the California Court of Appeals in Kirk v. Board of Regents of Univ. of California, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969), appeal dismissed for want of a substantial federal question, 396 U.S. 554, 90 S. Ct. 754, 24 L.Ed.2d 247 (1970). In *Kirk* the plaintiff challenged a one-year waiting period requirement for resident tuition purposes similar to the regulation here in question. Mrs. Kirk similarly argued that the one-year waiting period had a "chilling effect" on the right of interstate travel and thus its constitutionality should be judged in terms of whether it promoted a compelling state interest. In disposing of this contention the Court stated, *inter alia,* that:

While we fully recognize the value of higher education, we cannot equate its attainment with food, clothing and shelter. *Shapiro* involved the immediate and pressing need for preservation of life and health of persons unable to live without public assistance, and their dependent children. Thus, the residence requirement in *Shapiro* could cause great suffering and even loss of life. The durational residence requirement for attendance at publicly financed institutions of higher learning do not involve similar risks. Nor was petitioner (unlike the families in *Shapiro*) precluded from the benefit of obtaining higher education. Charging higher tuition fees to non-resident students cannot be equated with granting of basic subsistence to one class of needy residents while denying it to an equally needy class of residents.

■ For the above reasons, we conclude that this is not a case of an infringement of a fundamental right and thus the exacting standards of the compelling state interest test have no application. Unlike *Shapiro*, we find the one-year durational residence requirement challenged here does not constitute a penalty upon the exercise of the constitutional right of interstate travel and thus the regulation's constitutionality should be tested under the traditional equal protection standards. See Shapiro v. Thompson, *supra,* 394 U.S. at 638, n. 21, 89 S.Ct. 1322.

It is not disputed in this case that the regulation does discriminate against a class of residents; namely, those who have established residency in the State but have been in the State for less than one year. The regulation does create the presumption that such a resident, regardless of the circumstances or reasons which brought him into the State, is a nonresident for tuition purposes at the University for one year. Nor is it disputed that this presumption is irrebuttable in that, short of actually residing within the State for one year, no cir-

cumstances may be shown by the student which will overcome it. The regulation thereby economically discriminates against a class of residents based on the sole fact that they have resided in the State for less than one year.

 As a general principle, individuals should not be afforded different treatment by the State unless there is a relevant distinction between them, and a "statutory discrimination must be based on differences that are reasonably related to the purposes of the Act in which it is found." Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1350, 1 L.Ed.2d 1485 (1957). The "concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Reynolds v. Sims, 377 U.S. 533, 565, 84 S.Ct. 1362, 1383, 12 L.Ed.2d 506 (1964). However, uniform treatment does not mean that a state may never distinguish between citizens, Avery v. Midland County, 390 U.S. 474, 484, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), "and mere classification, as this Court has often said, does not of itself deprive a group of equal protection." Carrington v. Rash, 380 U.S. 89, 92, 85 S.Ct. 775, 778, 13 L.Ed.2d 675 (1965). Having disposed of the contention that this case involves the invasion of a fundamental right, we believe the test we must apply in resolving the Equal Protection Clause challenge is the test set down by the Supreme Court in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), wherein it stated:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Car-

bonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."—Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

Under this test, then, we must determine whether the distinction for tuition purposes between those residents who have resided within the State for one year and those who have not is reasonable, and whether it is rationally related to a legitimate object of the State of Minnesota.

 Plaintiffs assert that the one-year waiting period to acquire resident status for tuition purposes, since it is set up in terms of an absolute classification which is irrebuttable, is arbitrary and unreasonable. Plaintiffs rely on Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), in which the Supreme Court struck down a Texas constitutional provision which prohibited any member of the Armed Forces, having moved to Texas during the course of his military duty, from ever voting in any election in the state so long as he was a member of the Armed Forces. The Court stated that, "By forbidding a soldier ever to controvert the presumption of non-residence, the Texas Constitution imposes an invidious discrimination in violation of the Fourteenth Amendment." Carrington v. Rash, *supra* at 96, 85 S.Ct. at 780. Plaintiffs claim that the durational requirement here, by foreclosing a student who has resided in the state for less than one year from ever controverting the presumption of nonresidency, likewise imposes an invidious discrimination in violation of the Fourteenth Amendment.

We do not find the holding in Carrington v. Rash, *supra,* dispositive of this case. *Carrington* involved an absolute classification which could not be rebutted under any circumstances as long as the member of the Armed Forces resided in Texas. While the Supreme Court recognized that Texas was free to take reasonable and adequate steps to see that all applicants for the vote actually fulfilled the requirements of bona fide residence, this presumption of non-residence went beyond constitutional limits. We believe the classification here is not subject to the same infirmity. The regulation provides that an out-of-state student enrolled at the University is considered to be in Minnesota primarily for the purpose of attending school, and is presumed not to be in the State as a permanent resident. This presumption can be overcome if the student provides sufficient evidence to show bona fide domiciliary within the State, one element of which is proof that he has resided within the State for a period of one year. Thus, there is here no arbitrary or permanent classification of the type found to constitute invidious discrimination in Carrington v. Rash, *supra.* We believe it is reasonable to presume that a person who has not resided within the State for a year is a nonresident student, and that it is reasonable to require that to rebut this presumption the student must be a bona fide domiciliary of the State for one year. We find nothing in Carrington v. Rash, *supra,* which is inconsistent with this conclusion. See Kirk v. Board of Regents of Univ. of California, *supra.*

We turn, then, to the final question of whether the classification of the plaintiffs as nonresident students for tuition purposes is reasonably related to a legitimate objective of the State of Minnesota.

 Plaintiffs contend that the one-year waiting period serves no valid state purpose. They claim that viewing the possible justifications for the dura-

tional requirement, the regulation's only possible purpose and effect is to deter students or potential students from becoming residents of the State and to punish them severely if they become residents of the State. Defendants advance several grounds which they argue are valid State objectives served by the one-year waiting period. We need not, of course, explore all the grounds the defendants advance in justification of the regulation. It is enough that a solid foundation for the regulation can be found in any one of the grounds set forth. See McGowan v. Maryland, *supra,* 366 U.S. at 426, 81 S.Ct. 1101.

 The primary justification the defendants assert is that the one-year waiting period to acquire resident status for tuition purposes is a rational attempt by the State to achieve partial cost equalization between those who have and those who have not recently contributed to the State's economy through employment, tax payments and expenditures therein. As previously noted, charging nonresident students a higher tuition than that paid by resident students has been held to be constitutionally permissible. Clarke v. Redeker, *supra.* In *Clarke* the Court stated that,

> Although there is no way for this Court to determine the degree to which the higher tuition charge equalizes the educational costs of residents and nonresidents, it appears to be a reasonable attempt to achieve a partial cost equalization. The regulation classifying students as resident or nonresident for tuition purposes is not arbitrary or unreasonable and bears a rational relation to Iowa's object and purpose of financing, operating and maintaining its educational institutions. 259 F.Supp. at 123.

In Kirk v. Board of Regents of Univ. of California, *supra,* the State advanced the same justification for the one-year waiting requirement for resident tuition purposes advanced here. In holding that contribution to the State's economy and

partial cost equalization were valid State objectives served by the regulation, the Court stated:

> Thus, as we read *Shapiro v. Thompson*, while the payment of taxes, fiscal integrity and budgetary planning are expressly rejected either as "traditional equal protection tests" or as "compelling state interests" that justify the imposition of benefits essential to life and health, they may well be reasonably related to legitimate objectives of the State of California for the purpose of imposing residence conditions on attendance at a University or state college. (Footnote omitted.)

This state has a valid interest in providing tuition-free education to those who have demonstrated by a year's residence a bona fide intention of remaining here and who, by reason of that education, will be prepared to make a greater contribution to the state's economy and future. Accordingly, we hold that the regulation classifying students as residents or nonresidents for tuition purposes is not arbitrary or unreasonable and bears a rational limitation to California's objective and purpose of financing, operating and maintaining its many publicly financed educational institutions of higher learning. (Citations omitted.)

We believe that once the law affords recognition to the right of a State to discriminate in tuition charges between a resident and nonresident, that right to discriminate may be applied reasonably to the end that a person retains a nonresident classification for tuition purposes until he has completed a twelve-month period of domicile within the State. We believe that the State of Minnesota has the right to say that those new residents of the State shall make some contribution, tangible or intangible, towards the State's welfare for a period of twelve months before becoming entitled to enjoy the same privileges as long-term residents possess to attend the University at a reduced resident's

fee. Accordingly, we hold that the regulation requiring a one-year domicile within the State to acquire resident classification for tuition purposes at the University is constitutionally valid.