Janis L. WEAVER, Individually and for the class she represents, Plaintiff,

v.

Norris KELTON, Dean of Admissions and records of Lamar University, et al., Defendants.

Civ. A. No. 7784.

United States District Court,
E. D. Texas,
Beaumont Division.

April 24, 1973.

Phillip Bordages, Beaumont, Tex., Peter D. Williamson, Houston, Tex., for plaintiff.

John L. Hill, Atty. Gen., of Texas, Sam L. Jones, Jr., Asst. Atty. Gen., Austin, Tex., for defendants.

Before INGRAHAM, Circuit Judge, and FISHER and STEGER, District Judges.

MEMORANDUM OPINION

PER CURIAM.

On August 1, 1971, Plaintiff Weaver moved from the State of Kansas to Vidor, Texas, where her husband accepted employment. Shortly thereafter, the Weavers purchased a home, registered to vote, and became subject to state and local taxes following their move to Vidor. Approximately four months later, Plaintiff Weaver enrolled in Lamar University for the January 1972 term and was classified a "nonresident" student because she did not meet the requirement of Section 54.052(e)[1] of the Texas Education Code, V.T.C.A., which provides that an individual in Plaintiff's position can be classified a resident student only if she resides in Texas for a twelve-month period preceding her enrolling in an educational institution. Because of her nonresident classification, Plaintiff was required to pay a tuition rate ten times greater than that which was required of students who were classified as residents of Texas.

Believing herself to be a bona fide resident of Texas since August 1971, Plaintiff Weaver appealed her classification through the administrative channels afforded her under the Rules and Regulations of the Coordinating Board, Texas College and University System, which are supplemental procedures adopted to implement Section 54.052(e) and its companion, Section 54.054.[2] Plaintiff

1. Section 54.052(e) reads:
   An individual 21 years of age or over who resides out of the state or who has come from outside Texas and who registers in an educational institution before having resided in Texas for a 12-month period shall be classified as a nonresident student.

2. Section 54.054, which is captioned Nonresident Status: Presumption; Reclassification, reads:
   A nonresident student classification is presumed to be correct as long as the residence of the individual in the state is primarily for the purpose of attending an educational institution. After residing in Texas for at least 12 months, a nonresident student may be reclassified as a resident student as provided in the rules and regulations adopted by the Coordinating Board, Texas College and University System. Any individual reclassified as a resident student is entitled to pay the tuition fee for a resident of Texas at any subsequent registration as long as he continues to maintain his legal residence in Texas. Before February 15, 1972, the Coordinating Board, Texas College and University System, shall promulgate such rules and regulations.

unsuccessfully prosecuted administrative appeals to Lamar University's Dean of Admissions and Records and to the Board of Regents.

Plaintiff continued to pay out-of-state tuition fees through the 1972 summer session, but she became eligible for reclassification in August 1972, having resided in Texas for a full twelve-month period. After making application, Plaintiff was reclassified as a resident student and was permitted to pay "in-state" tuition rates;[3] however, despite her reclassification Plaintiff maintained a conviction that her initial classification as a nonresident was improper and violative of her constitutional rights. Therefore, Plaintiff continued to pursue this suit, which she had filed shortly before her reclassification, in order to have Section 54.052(e) of the Texas Education Code declared to be unconstitutional as a denial of Equal Protection and Due Process.[4] Application for a three-judge court was made eventually, and under the procedures outlined in Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968), the Chief Judge of the circuit empaneled the present court.

## I.

### Jurisdiction

■ While the parties have not argued the formality of jurisdiction in the perspective held by this panel, this Court feels compelled to find that Plaintiff has not made proper allegations to invoke federal jurisdiction. Plaintiff's

sole allegation of jurisdiction is only a bald assertion that the action is brought under the Fourteenth Amendment to the Constitution of the United States and that the amount in controversy exceeds $10,000.00 exclusive of interests and costs.

■ The Fourteenth Amendment secures a panorama of rights to the citizens and lawfully admitted aliens of the United States; however, Plaintiff confuses the mandate recognizing the *right* with the power to *remedy* violations thereof. Morris v. Travisono, 310 F. Supp. 857 (D.R.I.1970). The Fourteenth Amendment does not confer jurisdiction on federal courts. Kochhar v. Auburn University, 304 F.Supp. 565 (M.D.Ala.1966). Since that amendment only secures rights to citizens and the power of Congress to provide remedies through enabling legislation, it is necessary that every plaintiff set out in a complaint the applicable enabling acts, particularly the appropriate jurisdictional statutes. Thus, having failed to allege the jurisdictional statutes necessary to invoke limited, federal jurisdiction, the instant complaint is fatally defective and must be dismissed.

## II.

### Applicable Law

Even though Plaintiff has not shown any jurisdictional prerequisites, some comment on the merits seems advisable in view of the popular sentiments and interest in the issues. Therefore, for purposes of discussion the Plaintiff's

---

3. Since this suit has been filed, Plaintiff Weaver has subsequently graduated from college. Some intimation arose in the hearing of this cause that Plaintiff's reclassification, bolstered by her graduation, has rendered this cause moot. This Court rejects that interpretation in view of the class action allegations unless one were completely convinced that this Plaintiff was no longer a proper representative of the class. In any event, the gambit of issues surrounding Plaintiff's classification and reclassification remain viable so long as any possible charges paid by Plaintiff are excessive and are retained by the State of Texas.

4. Plaintiff's complaint alleges only a violation of Equal Protection. While Due Process was passingly mentioned in argument, Plaintiff's brief indicates that due process reliance is made on the strength of Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). *Bolling*, a decision in which racial segregation in Washington, D.C. was found to be violative of the Fifth Amendment since the Fourteenth Amendment applied only to the states, deserves only incidental consideration here and is therefore given only this minimal treatment.

Complaint will be treated as if jurisdiction had been properly pled and proved.

Although Plaintiff can present argument with some appeal, Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970), aff'd without opinion, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971) seems largely dispositive of the instant case. In *Starns* two women moved to Minnesota from Illinois when their husbands obtained employment there; they attempted to register as residents in a state university before they had resided in Minnesota for twelve months; however, they were classified as nonresidents because university regulations established an irrebuttable presumption that any person who had not continuously resided in Minnesota for one year immediately before enrolling in a university would be a nonresident for tuition purposes. The *Starns* three-judge panel upheld the Minnesota regulation, even with a challenge based on Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the decision which invalidated certain year-long residency statutes for state welfare recipients. The *Shapiro* decision was argued to show that no compelling state interest justified the discrimination resulting in Minnesota's classification of some bona fide residents as nonresidents since the state regulation infringed on a constitutionally-protected personal fundamental

right, the right to interstate movement. However, *Shapiro* was found to be distinguishable from *Starns* because *Shapiro* dealt with states' admitted attempt to "fence-out" indigents by denying them life's basic necessities and because the facts showing the proportion of out-of-state students to in-state students simply did not support the plaintiffs' contention.[5] With no supporting proof, the *Starns* decision expressly disposed of any possible assertion of a right to interstate movement as the basic fundamental right involved in the dispute over whom a state may legitimately classify as a nonresident student; and, this Court has found no argument, authority or proof offered by the instant plaintiff which dispells the reasoning of *Starns* on this point. Plaintiff Weaver has attempted to go one step beyond *Starns*, however, by asserting that another fundamental right is at stake over and above the right of interstate movement, the sole fundamental right asserted in *Starns*. Plaintiff asks this Court to recognize that the Texas statute infringes on the right of citizens to an education, or more precisely, the right to equal access to an education. Suffice it to say that the recent case, San Antonio Independent School District v. Rodriguez, decided March 21, 1973, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 has put such a notion to rest for the present, at least

5. One might note that it is difficult to imagine the quantum and kind of proof which would support this contention. The *Shapiro* plaintiffs were fortunate in having express statements which reflected that the one-year waiting period for welfare assistance had the specific objective of excluding the indigents who would move to get advantage of the better benefits offered by some states. *Shapiro*, 394 U.S. at 628–629, 89 S.Ct. 1322. The *Starns* plaintiffs were likewise fortunate in having statistics on the number of college students coming from out-of-state as compared with the number of students in-state, which indicated that the one-year period did not "deter any appreciable number of persons from moving into the state." *Starns*, 326 F.Supp. at 237–238. However, the meager statistics introduced at the hearing of this cause are not conclusive in themselves and they

have not been persuasively argued. Isolated figures from one university which are unassociated from an analysis of the motivations of students cannot prove that student residency statutes hinder entrance into a state, although a high percentage of out-of-state students could show that the durational residency statutes do not deter students from moving into a state. Too many variables other than the higher tuition fees for out-of-state students could account for some states having larger percentages of out-of-state students than others. Choice of higher education is commonly known to be a matter largely of personal preference, family tradition, institutional reputation and quality of education as well as other intangibles occasionally preferred in some states, such as moderate climate and abundant recreational facilities.

insofar as such right being constitutionally founded.

██ Without the presence of a fundamental personal liberty graced with constitutional protection—the freedom of interstate movement being inapplicable and the right of equal access to education being unfounded in the constitutional sense—the strict judicial scrutiny test used to determine if state statutes violate Equal Protection cannot be applied. Since the strict test is inapplicable, the state statutes must be afforded the usual presumption of validity and the Defendants do not have to "carry a 'heavy burden of justification;' that the State must demonstrate that its educational system has been structured with 'precision' and is 'tailored' narrowly to serve legitimate objectives and that it has selected the 'least drastic means' for effectuating its objectives." *Id.* at 16, 93 S.Ct. at 1288.[6]

Even though the strict judicial test could not be used herein, the statute would still be required to muster pass the test of whether it has a rational relationship to a legitimate state interest. Once again, the *Starns* decision has given guidance. In that case, it was noted that the year-long residency statute was rationally related to an objective of the state because it was reasonable to require a person coming from out-of-state to live for a year as a bona fide domiciliary within the state in order to rebut the presumption that one who has not lived in the state previously is a nonresident. Moreover, *Starns* also further explained that since the law afforded the states the right to discriminate in tuition charges between residents and nonresidents[7] that right to discriminate may be retained so that newcomers to the state shall make a contribution towards the welfare of the state's higher educational facilities. *Starns, supra*, 326 F.Supp. at 240–241.

██ In final analysis, we find the issues relating to the Texas statute not dissimilar to those which confronted the Minnesota district court, and we believe that the rationale approved therein should be now controlling. Perhaps it should be stated that the citations of Plaintiff, which show that there have been successful challenges to student residency statutes in Connecticut, New Mexico and Colorado,[8] have not gone completely unnoticed. In those cases, the offending statutory enactments were found to create abhorrent conditions in that once a student was classified as a nonresident it was either impossible for him to get reclassified or it was necessary for him to all but forego a whole year's education by enrolling for a low minimum number of semester hours. Understandably, these statutes were determined to suffer constitutional infirm-

6. *Rodriguez* extensively reviewed previous court rulings in explaining that two tests have developed when considering if state statutes possibly violate Equal Protection. The strict test is applied when the state statute interferes with fundamental rights or involves suspect classifications; thus, if the statute is found intruding in the arena of constitutionally protected rights, the state has the burden of showing that the statute serves a compelling state interest. Without a compelling state interest, the state cannot hinder the rights guaranteed to citizens. See Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). *See also e. g.*, Kramer v. Union School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). However if the classification of citizens created by the state statute, which is alleged to be discriminatory, does not affect a fundamental right or a suspect classification, constitutionality of the statute is tested on the basis of whether the statutes have been written so that they have some rational relation to a legitimate state interest. *See e. g.*, McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

7. *See* Johns v. Redeker, 406 F.2d 878, 883 (8th Cir. 1969) for an explanation that reasonable tuition charges to nonresident students tend to make the tuition charged more nearly approximate the cost per pupil of the operations of schools.

8. Kline v. Vlandis, 346 F.Supp. 526 (D. Conn.1972), cert. granted, —— U.S. ——, 93 S.Ct. 2230, 36 L.Ed.2d ——; Robertson v. University of New Mexico, 350 F. Supp. 100 (D.N.M.1972); Covell v. Douglas, 501 P.2d 1047 (Colo.1972).

ities; however, the Texas statutes are easily distinguishable in that they make allowance for future reclassification of nonresidents after they have overcome the presumptions set out in the statutes. No better proof of this fact can be mentioned than that the Plaintiff in this case was herself reclassified under the procedural steps afforded her.

In conclusion, one word of caution should be noted. Plaintiff Weaver attacked only Section 54.052(e) of the Texas Education Code, the only section which she had standing to attack. In addition, the supplemental Rules and Regulations of the Coordinating Board, Texas College and University System, have other factors to be considered in the reclassification process. This Court, nevertheless, declines to comment on any other portion of the Texas classification scheme for the reason that the discussion of this opinion is deliberately confined to Plaintiff Weaver and those who fall within the matrix of facts she presents.

Plaintiff's Complaint is Dismissed, and judgment will be entered accordingly.