Joseph R. DeCECCO, Petitioner-Appellant, †

v.

BOARD OF REGENTS, UNIVERSITY OF WIS-
CONSIN, Respondent.

Court of Appeals

*No. 88–1468. Submitted on briefs April 3, 1989.—Decided May
25, 1989.*

(Also reported in 442 N.W.2d 585.)

† Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of Joseph R. DeCecco, *pro se,* of McFarland.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Daniel S. Farwell,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

SUNDBY, J. Joseph DeCecco enrolled as a full-time law student at the University of Wisconsin-Madison on September 2, 1986 and, when he appealed his nonresident classification, had been fully enrolled for each succeeding semester. He was partially enrolled for

the 1987 summer session. At the time he applied for admission he was a Rhode Island resident. He paid nonresident tuition under sec. 36.27(1), Stats. He appealed his nonresident classification for tuition purposes for semester I, 1987–88, to the University of Wisconsin-Madison Nonresident Tuition Appeals Committee. After a hearing, the committee concluded: "1. That you [DeCecco] entered and remained in the State of Wisconsin principally to obtain an education and therefore a presumption of nonresidence has arisen. 2. The Committee further concluded that you have not rebutted this presumption with clear and convincing evidence." The committee therefore upheld DeCecco's nonresident classification for semester I, 1987–88. DeCecco appeals from the circuit court's decision affirming the committee's decision. We affirm the trial court.

## I.

## BACKGROUND

DeCecco paid nonresident tuition through August 31, 1987. He appealed his nonresident status to the University of Wisconsin-Madison Nonresident Tuition Appeals Committee under Wis. Adm. Code, ch. UWS 20.[1] His appeal was heard by the committee on September 10, 1987.

By letter of October 29, 1987, the office of the registrar notified DeCecco that the committee upheld his nonresident classification for semester I, 1987–88. The notice included the committee's findings of fact, conclusions and decision.

---

[1] The committee is created under sec. 36.27(2m), Stats., to hear appeals as to nonresident tuition exemptions under sec. 36.27(2).

On November 30, 1987, DeCecco filed a petition for judicial review of the committee's decision pursuant to sec. 227.52, Stats. DeCecco requested that the circuit court, under sec. 227.57(1), supplement the record with committee records for the preceding five years. He also requested the opportunity to directly examine, before the court, members of the committee to determine the criteria they used in making prior decisions. The trial court denied DeCecco's requests and affirmed the decision of the committee.

## II.

## DeCECCO'S CLAIMS

We consider that DeCecco makes the following claims: (1) The trial court abused its discretion in denying his request under sec. 227.57(1), Stats., to add to the record. (2) The committee violated his right to due process in determining his residence by relying upon his nonresident status at the time of enrollment and his continued student status during his durational residency period.[2] (3) The committee violated his right to the equal protection of the laws by denying him residence status for tuition purposes on the basis of his failure to contribute to the community through past payment of taxes.

---

[2] A durational residency period of twelve months is established by sec. 36.27(2)(d), Stats., which provides:

"Any person who has not been a bona fide resident of the state for 12 months next preceding the beginning of any semester or session for which such person registers at a university or center, except as provided in this subsection, is not exempt from the payment of the nonresident tuition."

## III.

## REQUEST TO ENLARGE THE RECORD

In his petition for review, DeCecco requested that the court add the following to the record, pursuant to sec. 227.57(1), Stats.: (1) All applications submitted to the committee over the past five years requesting relief from nonresident tuition, either by reclassification as a resident or fee remission, or both. (2) All findings of fact stating the decisions of the committee over the past five years concerning requests for relief from nonresident tuition. (3) The direct examination of members of the committee to elicit the criteria used by them in making prior decisions.

Section 227.57(1), Stats., provides:

> The [judicial] review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court and, if leave is granted to take such testimony, depositions and written interrogatories may be taken prior to the date set for hearing . . ..

The trial court denied DeCecco's request to add to the record for several reasons. First, DeCecco's petition for review raised substantive constitutional issues, not irregularities in agency procedure. Second, DeCecco had not applied to the court under sec. 227.56(1), Stats., to present additional evidence on the issues in the case. Finally, DeCecco made no showing, as required under sec. 227.56(1), that there were good reasons for his failure to present such evidence to the committee.

### A.

██ The trial court demonstrated that it exercised its discretion. It arrived at its decision by a process of reasoning. *See McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971) (discretion contemplates a process of reasoning). Its conclusion was based on a logical rationale founded upon proper legal standards. *Id.* The trial court did not abuse its discretion in denying DeCecco's request.

### B.

██ On reconsideration, DeCecco advanced reasons why he did not present the requested evidence to the committee. He did not, however, apply to the circuit court under sec. 227.56(1), Stats., for leave to present additional evidence. He asks that we excuse this failure because he appears *pro se.* There is an obligation on the part of a court to make reasonable allowances to protect *pro se* litigants from the inadvertent forfeiture of important rights because of their lack of legal training. *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983). *See also bin-Rilla v. Israel,* 113 Wis. 2d 514, 521, 335 N.W.2d 384, 388 (1983) (courts look to facts pleaded, not to label given to pleading, especially where litigant appears *pro se).* This is not, however, a case in which a *pro se* litigant has lost important rights because of lack of legal training. After the trial court denied his motion under sec. 227.57(1), Stats., DeCecco could have moved the court under sec. 227.56(1) for leave to present additional evidence. The trial court plainly charted DeCecco's procedural path. He chose not to follow it.

In any event, we conclude that DeCecco did not forfeit an important right when he lost the opportunity to present the requested evidence to the court. The preceding five years' applications and committee decisions would not have been relevant to his claims. Further, the testimony of the committee members as to the criteria they used in making their decisions would not have been admissible.

1. *Relevance of prior decisions.* DeCecco makes two claims as to the committee's decisionmaking process: the committee created a presumption which violated his due process rights; and, the committee violated his right to the equal protection of the laws when it denied him residence status because he had not made a contribution to the community through past payment of taxes.

a. Due Process Claim. The appeals taken to the committee in the preceding five years and its decisions on such appeals would not be relevant to DeCecco's due process claim. That claim stands or falls on the intrinsic reasonableness of the criteria relied on by the committee.

b. Equal Protection Claim. DeCecco's equal protection claim is not that he has been treated differently from other nonresident applicants but that he has been denied a benefit extended to residents, based on an impermissible factor, the past contribution by residents to the welfare of the state through the payment of taxes. Prior appeals to the committee by nonresidents and its decisions on such appeals would have no relevance to DeCecco's claim of discrimination.

2. *Admissibility of committee members' testimony.* A public officer performing a quasi-judicial function cannot be examined as to his or her mental processes in deliberating and voting on matters before the officer and the testimony of such officer, even if freely given, would be inadmissible. *See Gary W. v. State of LA., DHHR,* 861 F.2d 1366, 1369 (5th Cir. 1988) (examination of mental processes of quasi-judicial officer in making official recommendation inappropriate). DeCecco did not therefore lose an important right when the trial court denied his request that he be allowed to examine, before the court, members of the committee as to the criteria they applied in making decisions.

For these reasons, we conclude that the trial court did not abuse its discretion in denying DeCecco's request to enlarge the record.

## IV.

## PRESUMPTION OF NONRESIDENCE

DeCecco argues that the committee applied criteria based on his initial nonresidence and his student status during his durational residency period in such a way as to create the irrebuttable presumption of nonresidence struck down in *Vlandis v. Kline,* 412 U.S. 441 (1973).

In determining residency the committee applies sec. 36.27(2)(e), Stats., which provides:

In determining bona fide residence at the time of the beginning of any semester or session and for the preceding 12 months the intent of the person to establish and maintain a permanent home in Wisconsin is determinative. In addition to representations by the student, intent may be demonstrated or disproved by factors including, but not limited to,

filing of Wisconsin income tax returns, eligibility to vote in Wisconsin, motor vehicle registration in Wisconsin, possession of a Wisconsin operator's license, place of employment, and self-support. Notwithstanding par. (a), a student who enters and remains in this state principally to obtain an education is presumed to continue to reside outside this state and such presumption continues in effect until rebutted by clear and convincing evidence of bona fide residence.

Section 36.27(2)(a)1 exempts from nonresident tuition any adult student who has been a bona fide resident of the state for twelve months next preceding the beginning of any semester or session for which such student registers at a university or center. Section 36.27(2)(e), however, creates a continuing presumption of nonresidence if a student enters and remains in Wisconsin principally to obtain an education. That presumption continues until rebutted by clear and convincing evidence.

On its face, sec. 36.27(2)(e), Stats., does not create the presumption declared unconstitutional in *Vlandis.* In *Vlandis,* a Connecticut state law created a permanent residency status, established at the time of the student's admission to the state's higher education system. The Court held that a permanent irrebuttable presumption of nonresidence was so arbitrary and unreasonable that it violated the due process clause of the fourteenth amendment. The Court stated, however, that "our decision [should not] be construed to deny a State the right to impose on a student, *as one element in demonstrating bona fide residence,* a reasonable durational residency requirement, which can be met while in student status." *Id.* at 452 (emphasis added). The *Vlandis* Court, *id.* n. 9, footnoted *Starns v. Malkerson,* 326 F. Supp. 234 (Minn. 1970), where the district court upheld a regulation of the

University of Minnesota providing that no student could qualify as a resident for tuition purposes unless he or she had been a bona fide domicilary of the state for at least a year immediately prior thereto. *Starns* was affirmed summarily by the United States Supreme Court. 401 U.S. 985 (1971). The *Vlandis* Court emphasized that Minnesota's one-year durational residency requirement could be rebutted by a student, after living in the state for one year, by presenting sufficient evidence to show bona fide domicile within Minnesota. 412 U.S. at 452 n. 9. Residence within the state for one year, whether or not in student status, was merely one element which Minnesota required to demonstrate bona fide domicile. *Id.*

The *Vlandis* Court also stated that "[t]he State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates." 412 U.S. at 453–54.

DeCecco does not challenge the validity of Wisconsin's twelve-month durational residency requirement. He also does not dispute that Wisconsin may employ reasonable criteria for establishing residence, which can be met while in student status. He argues, however, that the committee required him to rebut the presumption that he came to Wisconsin principally for an education. He contends that the committee thus created for him a permanent residency status as of the time of his admission to the University which, under *Vlandis,* violated his right to due process. He also argues that the committee relied on his student status during his durational residency period to refute his claim of bona fide residence. He asserts that any weight given to the fact that during

his durational residency period he remained a student is inconsistent with the due process standards of *Vlandis.*

We turn to the committee's decision. While the committee made comprehensive findings of fact from which it drew its conclusions and made its decision, we find the greatest enlightenment from its discussion of these findings, conclusions and decision.

The committee stated that it considered the facts and circumstances surrounding DeCecco's application to the University of Wisconsin-Madison and his subsequent arrival at the University and concluded that "you entered and remained in Wisconsin principally to obtain an education." This finding was necessary to invoke the presumption of continued nonresidence under sec. 36.27(2)(e), Stats. If DeCecco had entered and remained in the state principally to become a resident of the state, the committee could not have invoked the presumption. The committee did not, however, by such finding prevent DeCecco from showing that he subsequently established bona fide residence in the state.

The record does not support DeCecco's claim that the committee applied pre-enrollment facts to determine his present residence status. The record supports that the committee applied these facts solely to determine whether the presumption of nonresidence applied. The committee considered that in December 1985, when he applied for admission to the law school, DeCecco was fully employed in Rhode Island; that at that time he listed a permanent address in Rhode Island and did not claim Wisconsin residence; that his decision to move to Wisconsin did not occur until after he had been accepted by the law school; and that he came to Wisconsin less than two weeks prior to the beginning of the fall 1986 semester. The committee noted that the basis for DeCecco's decision to come to Wisconsin was his deter-

mination to pursue an education to practice law. The committee found that DeCecco was a nonresident who came to Wisconsin primarily for educational purposes. The committee therefore invoked the presumption of nonresidence contained in sec. 36.27(2)(e), Stats.

Having before it this presumption of nonresidence, the committee considered whether DeCecco had rebutted this presumption by clear and convincing evidence of bona fide residence in the state for the twelve months preceding the fall 1987 semester. As evidence to support DeCecco's residence in the state, the committee considered his assertion that he had severed his ties to Rhode Island; that he obtained a Wisconsin operator's license; that he registered a motor vehicle in Wisconsin; that he registered to vote in Wisconsin; that he listed Wisconsin as his residence on federal tax returns; that he obtained a general student loan in Wisconsin for the 1987–88 school year; and his expressed intent to practice law in Wisconsin because of the advantage of not having to take a bar examination and his familiarity with Wisconsin law and its legal system. As countervailing factors the committee considered that for the previous year DeCecco derived a significant amount of financial support from sources outside the state, including savings presumably accumulated during employment outside the state and a guaranteed student loan obtained in August 1986 from a financial institution in Rhode Island; that he had not been employed in Wisconsin except for free lance writing during the summer of 1987, which the committee considered incidental to DeCecco's primary objective of obtaining a legal education; that he did not file a Wisconsin income tax return or have taxes withheld from income; and that he had "no deepening of involvement in community affairs in Wisconsin."

118

The committee found that overall, DeCecco's activities for the preceding twelve months had been "primarily associated with the educational objectives which initially brought [DeCecco] to this State."

DeCecco points to the committee's statement that he has been fully enrolled as a student since his initial enrollment as a full-time student. DeCecco claims that from this statement a "clear inference" can be drawn that the committee considered that his student status during the durational residency period "refutes an element of establishing bona fide residency." We disagree that the committee drew such an inference. The statement to which DeCecco alludes was simply a finding of fact. The only inference which can be drawn from the committee's discussion is that it considered DeCecco's student status during his durational residency period only to underpin the presumption of continued nonresidence. There is no evidence that the committee weighed this factor more heavily than any other factor.

We therefore reject DeCecco's argument that the committee, by consideration of DeCecco's initial nonresident status and continued student status, created an irrebuttable presumption of nonresidence in violation of his due process rights.

## V.

## CONTRIBUTION TO THE COMMUNITY THROUGH PAYMENT OF TAXES

DeCecco contends that the committee violated his right to the equal protection of the laws by conditioning his residence for tuition purposes upon the impermissible requirement that he have contributed to the welfare of the state by paying income taxes. We disagree that the committee imposed such a requirement.

The *Vlandis* Court stated that one of the criteria which could be applied in determining student residence was the filing of income tax returns. 412 U.S. at 454. DeCecco attempts to equate the committee's reliance on this factor with the statutory scheme struck down on equal protection grounds in *Zobel v. Williams,* 457 U.S. 55 (1982). *Zobel* involved a plan devised by the Alaska legislature to distribute the income from Alaska's mineral resources to its adult residents, based on their length of residence. The Court found that, at least with respect to a durational-residency discrimination, a state's desire to reward citizens for past contributions was not a legitimate state purpose and violated the equal protection clause. *Id.* at 68.

DeCecco argues that Wisconsin violated his right to equal protection by denying him residency status for tuition purposes on the basis of his failure to pay past taxes, especially after he completed his durational residency requirement. He also argues that to withhold residency recognition on that basis is "a confounding" of *Vlandis*'s "reasonable criteria" standard. He points out that he did not earn enough taxable income to file a tax return. He notes that the law school warns first-year students not to carry the double load of part-time employment and law school studies.

DeCecco's arguments miss the point. The income tax filing and paying criteria are merely factors which assisted the committee in determining the bona fides of his residence claim. The *presence* of these factors lends support to a nonresident's case. The *absence* of these factors does not resolve the question of residence against the student, but it weakens the student's case. Tax-filing and tax-paying status are reasonable criteria for establishing in-state status. They are part of the criteria

which a state is free to adopt to make "virtually certain," *Vlandis,* 412 U.S. at 453-54, that nonresidents do not take advantage of in-state tuition rates. The requirement that a nonresident student who is in the state principally to obtain an education establish bona fide residence by clear and convincing satisfaction of criteria associated with residence does not make such criteria unreasonable. In sum, the committee's decision, based on such criteria, did not violate DeCecco's right to due process and equal protection.

## VI.

## DECISION

We decide that the trial court did not abuse its discretion in denying DeCecco's request to enlarge the record. We further decide that the committee did not violate DeCecco's due process rights by weighing in its decisionmaking process his initial nonresident status and his continued status as a student during his durational residency period. Finally, we hold that the committee did not deny DeCecco the equal protection of the laws by considering his failure to file a Wisconsin income tax return and withhold income taxes from earnings in determining his intent to establish and maintain a home in Wisconsin. DeCecco has failed to overcome the presumption of continued nonresidence by clear and convincing evidence of bona fide residence within the state.

*By the Court.*—Order affirmed.