James **STURGIS** et al., Plaintiffs,

v.

**STATE OF WASHINGTON** et al.,
Defendants.

No. 614–72C2.

United States District Court,
W. D. Washington,
Seattle Division.

June 20, 1973.

Judgment Affirmed Dec. 3, 1973.
See 94 S.Ct. 563.

Peter D. Francis, Seattle, Wash., for plaintiffs.

James B. Wilson, Seattle, Wash., for defendants.

Before WRIGHT, Circuit Judge, and EAST* and McGOVERN*, District Judges.

McGOVERN, District Judge:

Plaintiffs seek to have this Court declare unconstitutional certain Washington State statutes which impose upon them a one-year durational residency requirement to qualify as residents for tuition purposes at the University of Washington. It is stipulated that each plaintiff is a registered full-time student at the University, and, with two exceptions, each plaintiff has established a

---

* Honorable Eugene A. Wright, United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon and Walter T. McGovern, United States District Judge for the Western District of Washington, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated January 29, 1973.

bona fide domicile in the State of Washington within the meaning of RCW 28B.15.012.[1]

That statute defines a resident student as one who has: (a) established a bona fide domicile in the State of Washington for other than educational purposes, and (b) established and maintained that domiciliary status for more than one year immediately preceding the commencement of the first day of the school term for which he registered at the State's institution of higher learning.

It is contended that the challenged statutes[2] require the plaintiffs to be treated differently for tuition purposes than other residents of the State, and thus, for no compelling state reason, they are deprived of their rights under the Equal Protection Clause of the United States Constitution. They further contend that the statutes in question violate their constitutional rights to travel and to the due process of law.

The action is instituted under 42 U.S. C. § 1983 (Civil Rights Act). Jurisdiction is vested in the Court under 28 U. S.C. §§ 1331 and 1343, and the Three-Judge Court was convened pursuant to the provisions of 28 U.S.C. §§ 2281 and 2284.

We find there to be no constitutional infirmity in the challenged statutes.

Plaintiffs argue that the discrimination created by the statutes in question

1. "28B.15.012—Definitions

Whenever used in chapter 28B.15 RCW:

(1) The term 'institution' shall mean a public university, college, or community college within the state of Washington.

(2) The term 'resident student' shall mean a student who has had a domicile in the state of Washington for the period of one year immediately prior to the time of commencement of the first day of the semester or quarter for which he has registered at any institution and has in fact established a bona fide domicile in this state for other than educational purposes: *Provided,* That a nonresident student enrolled for more than six hours per semester or quarter shall be considered as attending for educational purposes only, and for tuition and fee paying purposes only such period of enrollment shall not be counted toward the establishment of a bona fide domicile of one year in this state unless such student proves that he has in fact established a bona fide domicile in this state for other than educational purposes.

(3) The term 'nonresident student' shall mean any student who does not qualify as a 'resident student' under the provisions of RCW 28B.15.011 through 28B.15.014 as now or hereafter amended.

(4) The term 'domicile' shall denote a person's true, fixed and permanent home and place of habitation. It is the place where he intends to remain, and the place to which he expects to return when he leaves without intending to establish a new domicile elsewhere.

(5) The term 'minor' shall mean a male or female person who is not deemed and taken to be of full age and majority for all purposes under RCW 26.28.-010, as now law or hereafter amended; the term 'emancipated minor' shall mean a minor whose parents have entirely surrendered the right to the care, custody, and earnings of such minor and whose parents no longer in any way support or maintain such minor.

(6) The term 'qualified person' shall mean a person qualified to determine his own domicile. A person of full age and majority for all purposes under RCW 26.28.010, as now law or hereafter amended, or an emancipated minor is so qualified.

(7) The term 'parent-qualified student' shall mean a student having a parent who has a domicile in the state of Washington but who does not have legal custody of the student because of divorce or legal separation.

(8) The terms 'he' or 'his' shall apply to the female as well as the male sex unless the context clearly requires otherwise. [Added by Laws 1st Ex Sess 1971 ch 273 § 2, effective May 21, 1971; Amended by Laws 1st Ex Sess 1972 ch 149 § 1, effective February 25, 1972.]"

2. RCW 28B.15.005, 28B.15.010, 28B.15.012, 28B.15.013, 28B.15.014, 28B.15.100 and 28B.15.200.

infringe upon their basic constitutional rights and thus cannot be sustained in absence of a compelling state interest for the differentiation. They rest their arguments primarily on Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). In *Shapiro*, the court declared unconstitutional certain State of Connecticut and District of Columbia statutory provisions which denied welfare assistance to persons who had not resided within the geographical boundaries of those jurisdictions for at least one year immediately preceding the application for the assistance. The Court reasoned that the classification served to limit the constitutionally protected right of the plaintiffs to travel, and that defendants had failed to prove that there was a compelling Governmental need for the discrimination. In *Dunn*, a Tennessee law creating a durational residency requirement of one year for purposes of qualifying residents to vote was held to be in violation of the Equal Protection Clause of the United States Constitution. The Court held that it had the effect of creating a classification which resulted in the denial to some citizens of the fundamental constitutional right to vote and that it directly impinged on the exercise of a second fundamental right, the right to travel.

Dispositive of the arguments raised by plaintiffs here is the reasoning of the Court in Starns v. Malkerson, 326 F. Supp. 234 (D.C.Minn.1970), affirmed without opinion, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), which we adopt, and where the facts were almost identical to those at hand. In *Starns*, the University of Minnesota Board of Regents adopted a regulation which provided in part that:

"No student is eligible for residence classification in the University . . . unless he has been a bona fide domiciliary of the state 'for at least a year immediately prior thereto.'"

In determining that the compelling state interest test was not the appropriate standard to apply in evaluating the classification, the *Starns* Court distinguished *Shapiro* in two respects, first, that:

"The Supreme Court found, based on weighty evidence, that the one-year waiting period for welfare assistance had as a specific objective the exclusion from the jurisdiction of the poor who needed or may need relief. Shapiro v. Thompson, *supra* at 628–629, 89 S.Ct. 1322. The Court stated that such a purpose could not serve as a 'justification for the classification created by the one-year waiting period, since that purpose is constitutionally impermissible.' Id. at 629, 89 S. Ct. at 1329." 326 F.Supp. at 237.

By contrast, the court in *Starns*, noted that there was no set of facts by which it could find that the tuition residency requirement was in any way designed to exclude or even deter an appreciable number of out-of-state students from attending the University of Minnesota and, for that reason, the compelling state interest test was held to be not applicable. As indicated by the record in that case,

"Of the approximately 50,000 students enrolled in the University (of Minnesota) . . . over 6,000 were nonresidents."

Similarly, the total enrollment at the University of Washington for the Autumn Quarter of the 1972–1973 school year was 34,125 students, of whom 5,913 were classified as non-residents.

The record before us is devoid of evidence, or even a suggestion, that this tuition residency requirement was intended for any reason other than to cover the bare costs of providing for the students' costs of education. In fact, the only evidence before this Court which relates to the actual cost of higher education in the State of Washington shows that the fees for a non-resident student

are directly related to the cost of educating that student. Thus, the non-resident student merely pays his way and no penalty can correctly be said to have attached to the non-resident status.

■ The second distinguishing feature found by the Court in *Starns* was said to be that:

> "In *Shapiro*, the one-year waiting period for welfare assistance had the effect of denying the basic necessities of life to needy residents. Thus, the deterring effect on interstate movement by the use of the residency requirement was readily apparent." 326 F.Supp. at 238.

But that was not true in *Starns*, nor is it true here, because a person is not entitled to a higher education as a matter of right. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (March 21, 1973). Also, see the Washington State Constitution [3] which makes provision only for the education of children. And, obviously, it cannot rightfully be said that a person without a higher education is a person without the basic necessities of life.

■ While plaintiffs claim that the Court is bound by *Shapiro* and *Dunn* to subject the challenged statutes to "close judicial scrutiny", it is observed that the residential classifications in those cases involved not only the right to travel, but also the right to the basic necessities of life and the right to vote. As already noted, the right to a higher education which is involved here is not a fundamental right. San Antonio Independent School District v. Rodriguez, *supra*. Accordingly, we conclude that this is not a case of infringement of a fundamental right and therefore hold that the exacting standards of the compelling state interest test are not here applicable.

Instead, the constitutionality of the contested statutes must be viewed in the light of the traditional equal protection standard, i. e., is there a rational, reasonable, relevant distinction between the differentiated classes? If there is not, then the mandate of the Equal Protection Clause has been violated.

■ Plaintiffs contend that they are foreclosed by the durational residency requirement from successfully controverting for a period of one year the presumption of non-residency, and that such a presumption is arbitrary, unreasonable and an invidious discrimination against them in violation of their Fourteenth Amendment rights. We find there to be a rational basis for the classification and thus hold otherwise.

The evidence before this Court shows that the purpose of the differentiation is to afford residents of this State who have resided here for more than one year immediately preceding the commencement of the school term an opportunity to attend the University at a cost subsidized by the taxpayers of the State, while charging those who have not theretofore contributed tax dollars to the State the actual cost to the State of their education. The one-year waiting period thus serves to provide the state with a time period during which it may charge a realistic tuition rate in order to achieve a partial cost equalization. As the Court said in *Starns*:

> "We believe that the State . . . has the right to say that those new residents of the State shall make some contribution, tangible or intangible, towards the State's welfare for a period of twelve months before becoming entitled to enjoy the same privileges as long-term residents possess to attend the University at a reduced resident's fee."

It appears to us that for the foregoing reasons, the distinctions drawn by the challenged statutes bear a rational, reasonable and relevant relationship to a legitimate state purpose and thus constitute permissible legislation. See McGowan v. Maryland, 366 U.S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961), and McDonald v. Board of Election Commis-

---

3. See Washington State Constitution, Article IX, §§ 1–5.

sioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

It is the judgment of this Court that the statutes of the State of Washington which require a State University student to establish a one-year residency within the State in order for that person to qualify as a resident student for tuition purposes are constitutionally valid. Judgment will accordingly be entered for the defendants.[4]

WILLIAM G. EAST, District Judge (dissenting).

I respectfully dissent from the majority's disposition of the claims of the Washington resident plaintiffs. I disagree with the *Starns'* reading of *Shapiro*, and believe that authority is undeserving of the majority's faith. *Starns* took its lead from Kirk v. Board of Regents of University of California, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969), an early misreader of *Shapiro*, and nurtured three misconceptions into its untenable approval of the durational residence requirement.

I believe *Starns* misconceives, first, the right and the privilege of the plaintiffs affected by the classifications and secondly, the State of Washington's asserted interest in support of the classifications and, lastly, the appropriate test under which such interest is to be evaluated.

At the outset I outline my understanding of the obligation on the part of the State of Washington to its residents in the context of this cause. The State does not have any obligation to furnish its residents, at public expense, with any program of higher education, nor as far as it matters, any program of welfare benefits, public parks or public health or protection. However, when its legislature does provide by law at public overall expense any such program, meager or abundant as it may be, Washington is obligated to offer that program, subjected, as it may be, to any lawful police power regulation and conditions of fiscal recoupment, to all its residents on an equal basis.

"The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws." Takahashi v. Fish & Game Comm'n, 334 U.S. 410 at 420, 68 S.Ct. 1138 at 1143, 92 L.Ed. 1478 (1948), cited in Graham v. Richardson, 403 U.S. 365 at 374, 91 S.Ct. 1848 at 1853, 29 L.Ed.2d 534 (1971).

The State of Washington has recognized the advantages of a system of higher education to its inhabitants and the legislature has enacted laws establishing a program for such at public expense. Those laws together with lawful regulations thereunder provide for conditions of eligibility for enrollment and the fixing of tuitional charges to be met by the students in order to share and

---

4. We note that after oral argument in this case, the Supreme Court ruled on a collateral issue in Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (June 11, 1973). There, the Court held that a permanent irrebuttable presumption of non-residence for tuition purposes violates the Due Process Clause of the Fourteenth Amendment. In reference to the *Starns* case, *supra*, on which we rely, the Supreme Court stated 93 S.Ct. at 2236:

"Nor should our decision [in Vlandis v. Kline] be construed to deny a State the right to impose on a student, as one element in demonstrating bona fide residence, a reasonable durational residency requirement, which can be met while in student status. We fully recognize that a State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis."

Thus, the Supreme Court clearly distinguished between statutory schemes that impose irrebuttable presumptions of non-residence and those states that use residency requirements as one element in determining bona fide residence. Washington's statutory framework falls within the latter category and is therefore consistent with the ruling in Vlandis v. Kline, *supra*.

participate in the offered system or program of higher education. The particular statute under challenge is a mandatory guide for fixing tuitional amounts to be paid by students for the recoupment of fiscal outlay by the State in providing the program.[1] Our ultimate query then is: Whether that statute and the regulations thereunder grants the plaintiffs "equality of legal privileges with all [residents] under non-discriminatory laws."

We start with these two undisputed basics:

1. The statute for tuition purposes divides Washington's higher education student population or residency into two classifications,

  a) the year plus, or old resident, and

  b) the minus year, or new resident.[2]

2. That the statute and regulations thereunder effectuate a tuition charge of X dollars to the old resident student in classification a) and tuition charges of X plus dollars to the new resident student in classification b). In short, the statute economically favors one class of residents and discriminates against another. This act of discrimination is conceded by *Starns*, 326 F.Supp. at 238.

Our course then is clearly charged in the following paraphrase of the language in *Dunn*, 405 U.S. at 335, 92 S.Ct. 995. To decide whether the statute violates the Equal Protection Clause, we look, in essence, to three things: the character of and the basis for the classification b)—a new resident of less than one year duration; the individual interests affected by the classification—the economic burden or penalty placed upon the new resident student by reason of the fact that he has recently traveled to the State of Washington; and the interests of the State of Washington asserted in support of the classification on fiscal outlay and recoupment. In the present case, *whether* we look to the benefit withheld by the classification (the opportunity to participate on an economic equality of legal privileges with old residents) *or* the basis for the classification (recent interstate travel), I would conclude that Washington must show a substantial and compelling reason for imposing the durational residence requirement.

I will decline to burden this dissent with further discussion of the claim of unequal treatment arising from the benefit withheld or the economic burden imposed by the classification b). The Equal Protection Clause just simply prohibits such apportionment of State services. *Shapiro*, 394 U.S. at 632–633, 89 S.Ct. 1322.[3]

The basis for the statutory creation of classification b) composed of new resident students is made possible solely because its members have recently, within 1 to 364 days, elected to travel to and live at a place of their choosing, the State of Washington. This freedom to travel is not limited to a mere directional concept or act of interstate commerce but embraces the fundamental right of an individual to go about in his own individualistic pursuit of happiness, and receive equal treatment under the laws of a given state.

"The constitutional right to travel from one State to another . . . occupies a position fundamental to the

---

1. As distinguished from "a reasonable durational residence requirement" to evidence a bona fide residency. Such a requirement, similar to pre-election date residence voters registration and pre-examination date residence bar applicants registration requirements, appears to have been approved under Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63, June 11, 1973. The Washington Statute is not intended nor geared to be a residence evidencing or purity measure, nor can a period of one year be logically determined to be a reasonable period of time for such a purpose.

2. In any language the classification b) results in a durational residence requirement.

3. See Mr. Justice White's concurring Opinion in *Vlandis* at Page 2238.

concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized.

". . . [T]he right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Shapiro*, 394 U.S. at 630–631, 89 S.Ct. at 1329.

"Thus, the durational residence requirement directly impinges on the exercise of a second fundamental personal right, the right to travel." *Dunn*, 405 U.S. at 338, 92 S.Ct. at 1001.

*Shapiro* did not consider the statute before it was geared to deter traveling and then find as a fact the statute was non-deterrent to traveling as did *Starns*, but on the contrary clearly held "in moving from State to State . . . [plaintiffs] were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional," 394 U.S. at 634, 89 S.Ct. at 1331. See San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, March 21, 1973.

Our clear obligation then is to measure the durational residence requirement of the statute by a strict equal protection test and determine whether Washington has demonstrated that such a requirement is "necessary to promote a compelling government interest."

The evidence before us discloses that the administrators of Washington's system of higher education under Washington's statute and regulations from time to time fix the tuition charges for the old resident student at a figure below the accountant's ascertainment of a per student cost of the system. In other words, the resident student is subsidized at some State expense.

On the other hand, new resident student's tuition is fixed in an equal amount plus a differential in amount theoretically equal to the subsidy granted the old resident student.

The evidence further discloses that the aggregate of the differential charged and collected from new resident students annually approximates nine million dollars. This figure indeed represents a substantial fiscal and budgeting resource in recoupment, if upheld, of the public expense in maintaining the system, however, by the same token, a substantial penalty upon those who have exercised their fundamental right to travel, live in the State of Washington and participate in a public program that is open to other residents at a lower admission price.

If Washington is required to grant equality of legal privileges to the new resident students and forego the annual recoupment of fiscal outlay, it will necessarily burden the fiscal program of the State. Albeit, that result is the command of the Equal Protection Clause.

"[A] State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. . . ." *Shapiro* 394 U.S. at 633, 89 S.Ct. at 1330.

Since a new resident student as well as an old resident is a "person" for equal protection purposes, Washington's concern for fiscal integrity, expenditure or recoupment is no more compelling a justification for the classification b) in this case than it was in *Shapiro*.

I would void the statute so far as it establishes classification b).