Dennis M. **MONTGOMERY**,
Plaintiff,

v.

William A. **DOUGLAS et al.,**
**Defendants.**

Civ. A. No. 74–F–720.

United States District Court,
D. Colorado.

Dec. 20, 1974.

Jonathan B. Chase, Boulder, Colo., for plaintiff.

John P. Moore, Atty. Gen. of Colo., Denver, Colo., John P. Holloway, Asst. Atty. Gen., University Counsel, Richard A. Tharp., Asst. Atty. Gen., Asst. University Counsel, Boulder, Colo., for defendants.

Before DOYLE, Circuit Judge, and ARRAJ and FINESILVER, District Judges.

## MEMORANDUM OPINION AND ORDER

FINESILVER, Judge.

In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff seeks a declaratory judgment holding unconstitutional a Colorado statute requiring that students at state universities be domiciled in Colorado for at least one year before receiving in-state tuition status. Plaintiff also requests injunctive relief certifying him as an in-state student. A three judge District Court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 (1970). Parties have filed cross motions for summary judgment. Jurisdiction is conferred pursuant to 28 U.S.C. § 1343(3) (1970).

### FACTS

Plaintiff is a 28 year-old male who has resided in Boulder, Colorado, since August 17, 1973. He enrolled in the University of Colorado School of law in the fall of 1973, and has been in attendance since that time. In April of 1974, plaintiff filed a petition with defendants, members of the University's Committee on Tuition Status, seeking classification as an in-state student for tuition purposes for the summer session, 1974. The petition was denied by the Committee and by the Appeals Board of the Committee on the ground that plaintiff did not meet the definition of an in-state student under C.R.S. § 124–18–2(2) (Supp.1967). A similar request for in-state tuition status for the fall semester, 1974 was denied. In its letter of denial dated July 10, 1974, the Committee indicated that plaintiff had established domicile in Colorado in March, 1974; however, he failed to meet the statute's requirement of one year of residency within the state after the establishment of domicile. It is conceded by the parties that domicile was established by plaintiff in March, 1974.

### STATUTE

The statute under challenge, C.R.S. § 124–18–2(2) (Supp.1967) provides:

The words 'in-state student' shall mean a student who has been *domiciled in Colorado for one year or more immediately preceding registration at any institution of higher learning in Colorado for any term or session for which domiciliary classification is claimed* . . . . [emphasis supplied]

C.R.S. 124–18–2(3) (1963) defines domicile as follows:

. . . a person's true, fixed, and permanent home and place of habitation. It is the place where he intends to remain, and to which he expects to return when he leaves without intending to establish a new domicile elsewhere.

## CONTENTIONS OF THE PARTIES

In support of his challenge to the constitutionality of the statute, plaintiff advances the argument that the statute deprives him of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

In particular, plaintiff claims statutory unconstitutionality for these reasons: (a) that the one year waiting period after establishing domicile has no rational relationship to a legitimate state interest of assuring in-state tuition preference to students intending to remain in Colorado after completing college education, and that this period creates an

unreasonable classification between new and old domiciliaries; (b) it is constitutionally impermissible for Colorado to exact contribution in the form of higher tuition from new domiciliaries for one year prior to their receiving state subsidization of tuition; and (c) twelve month domiciliary requirements, as here challenged, are unconstitutional in that they inhibit the right to interstate travel.

In their argument in support of the constitutionality of the statute, defendants contend that the statute has a rational basis for furthering legitimate state interests in providing higher education at lower tuition rates to bona fide domiciliaries of Colorado.

Defendants assert several major state interests served by the statute: (a) that the primary purpose of the statute is to provide the state "with an objective means of ascertaining that a person is not residing in the state solely to take advantage of its educational facilities;" (b) that the statute aids the state in distinguishing students who are in Colorado solely to obtain an education from those who plan to remain in Colorado permanently; and (c) the statute rationally relates to the interest of Colorado in ensuring that new domiciliaries have made or will make some contribution to the state before the state subsidizes their education through reduced tuition.

We have carefully considered the contentions of the parties and conclude that the statute, C.R.S. § 124–18–2(2) (Supp.1967), is constitutional.

## DOES COLORADO'S TWELVE MONTH DOMICILIARY TUITIONAL REQUIREMENT HAVE A RATIONAL RELATIONSHIP TO A LEGITIMATE STATE INTEREST?

We answer in the affirmative. The precise question of the constitutional validity of a one-year domicile requirement for in-state tuition purposes has not been determined by the Supreme Court in a written opinion where that issue was squarely presented. However, the Court has summarily affirmed lower court decisions upholding one year domiciliary requirements as a requisite to eligibility for in-state tuition. Sturgis v. State of Washington, 368 F.Supp. 38 (W.D.Wash.1973), aff'd mem. 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973); Starns v. Malkerson, 326 F. Supp. 234 (D.Minn.1970) aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), and has made reference to these cases in other decisions, e. g., Memorial Hospital v. Maricopa County, 415 U.S. 250, 260 n. 15, 94 S.Ct. 1076, 39 L. Ed.2d 306 (1974); Vlandis v. Kline, 412 U.S. 441, 452–453 n. 9, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

In Vlandis v. Kline,[1] *supra*, in its only written opinion on the issue of non-resident tuition, the Court considered a Connecticut statute that distinguished between residents and non-residents. The Connecticut statute established a conclusive and irrebuttable presumption that a person's non-state residence status at the time of college admission continues

---

1. Several Colorado Supreme Court cases emanate from ·the University of Colorado have considered state tuition issues. At the time *Vlandis* was decided, the appeal of Covell v. Douglas, 501 P.2d 1047 (Colo.1972), cert. den. 412 U.S. 952, 93 S.Ct. 3000, 37 L. Ed.2d 1006 (1973), was pending before the United States Supreme Court. In *Covell* the constitutionality of the Colorado domiciliary statute was in issue. The statute was similar to the one in Connecticut. The Colorado statute prohibited non-resident students from ever contesting the presumption of non-residence for tuition purposes during their college career. The Colorado Supreme Court held that the statute was unconstitu-

tional in imposing invidious discrimination violative of the Fourteenth Amendment. Following its ruling in *Vlandis*, certiorari was denied by the Supreme Court.

In Landwehr v. Regents, 156 Colo. 1, 396 P.2d 451 (1964), the Colorado Supreme Court held that the classification of students applying for admission to state universities —in-state versus out-of-state classification for tuition purposes—is not arbitrary or unreasonable and is not so lacking in foundation as to contravene the equal protection, due process, interstate commerce, or privileges and immunities clauses of the federal constitution, or the due process clause of the state constitution.

throughout the student's entire college education. Thus, the student remained a non-resident for as long as the student was attending a Connecticut state supported college or university. The Court held that the statute violated the due process clause of the Fourteenth Amendment in denying a student the opportunity throughout his student career of demonstrating that he had in fact attained the status of a bona fide resident of the state. The Court expressly rejected the basis upon which Connecticut fixed residency permanently as the student's residency at the time of application for admission. The state was unable to justify its all-inclusive requirement as furthering legitimate state ends.

In sum, the Court held that students must be given an opportunity to demonstrate that they have become bona fide domiciliaries during their status as students. The Court specifically noted that it was not deciding the question of whether a state may impose a reasonable durational residence requirement on students as one element in demonstrating bona fide residence for tuition purposes. *Id.* at 452, 93 S.Ct. 2230. In fact, the Court indicated that such residence requirements were legitimate considering the "special problems involved in determining the bona fide residence of college students who come from out of State to attend that State's public university." *Id.* at 452, 93 S:Ct. at 2236; *see also* 452 n. 9, 93 S.Ct. 2230. The Court suggested that there would be no constitutional infirmity in the statute if students were given an opportunity to demonstrate that they were bona fide domiciliaries after one year of residence in a state. We find it significant that the Court stated that it "fully recognize[d] . . . the right of [a State's] own bona fide residents to attend [its] institutions on a preferential tuition basis." *Id.* at 453, 93 S.Ct. at 2236. *See* Note,

The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534, 1543–44 (1974).

In lower court decisions, the courts have been faced with constitutional challenges to statutes similar to the one under consideration. Sturgis v. State of Washington, 368 F.Supp. 38 (W.D. Wash.1973), aff'd mem., 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973); Starns v. Malkerson,[2] 326 F.Supp. 234 (D.Minn.1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971); Kirk v. Board of Regents of University of California, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969) app. dismissed, 396 U.S. 554, 90 S.Ct. 754, 24 L. Ed.2d 747 (1970). *See* Hasse v. Board of Regents of Hawaii, 363 F.Supp. 677 (D.Hawaii 1973); Hooban v. Boling, 371 F.Supp. 1111 (E.D.Tenn.1973), aff'd, 503 F.2d 648 (6th Cir. 1974); Clarke v. Redeker, 259 F.Supp. 117 (S. D.Iowa 1966) aff'd 406 F.2d 883 (8th Cir. 1967), cert. den., 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 115 (1969). The court in each case concluded that a one-year residency requirement for in-state tuition purposes was rational and legitimate and did not create invidious classifications in violation of the Equal Protection Clause. We note also that the Court in *Vlandis, supra,* cited *Starns* with approval and noted that a one-year durational residence requirement was significantly different from the regulation under consideration in that case. The rationale in *Vlandis* supports the conclusion that a one-year residency requirement is rationally related to a state's legitimate interest in providing lower tuition rates to actual domiciliaries of the state.

Plaintiff seeks to distinguish *Starns, Sturgis,* and *Kirk* on the ground that the statutes or regulations involved made one-year residency simply another element in determining domicile rather

2. *Starns* is a 1970 Minnesota case which upheld a University of Minnesota regulation requiring bona fide residency in the state for one year prior to classification as a resident student. The student could use the time spent as a student in the state toward establishment of residency. The Connecticut statute in *Vlandis* did not recognize time spent while a student as state residency for tuition purposes.

than an additional requirement *after* domicile had been established. Plaintiff interprets the reference to *Starns* and *Kirk* in *Vlandis* as indicating that the legitimate purpose for which the statutes were upheld was to provide the state with one additional element required in order to establish domicile. Plaintiff contends that the Colorado statute, in contrast to the Minnesota, Washington, and California statutes, requires one-year residence *after* domicile is established, and thus it discriminates against new domiciliaries and is not based on the legitimate state interest in distinguishing between domiciliaries and non-domiciliaries.

In our view the cases do not support plaintiff's argument on this point. Our reading of the statutes and regulation involved, and the opinions in regard thereto, clearly indicates that the one-year residency requirements in each case were in addition to the establishment of domicile. Thus, the one-year requirement was not, in fact, another element necessary to establish domicile, but was an additional requirement after domicile had been established. However, the one-year requirement may well have been an element the state could consider in determining *bona fide* domicile. The Court in *Vlandis* stated that the Minnesota regulation upheld in *Starns* "was merely one element which Minnesota required to demonstrate *bona fide* domicile." [emphasis supplied] *Vlandis, supra,* 412 U.S. at 453 n. 9, 93 S.Ct. at 2237, 37 L.Ed.2d 63. Plaintiff contends that this statement demonstrates that the Court considered the residency requirement as another element Minnesota required to establish domicile; however, the inclusion of the words "bona fide" is significant in light of the Minnesota regulation's express requirement that a student be domiciled in Minnesota for one year before he would be entitled to reduced tuition. Thus, the statute required the establishment of domicile before the one year of residence began. *See also Sturgis, supra,* 368 F.Supp. at 42 n. 4 wherein the court construed

*Vlandis* as approving the use of residency requirements as one element in determining *bona fide* domicile. We do not agree with plaintiff that the Supreme Court and other courts which have construed residency requirements in this context have recognized a narrow distinction between statutes which require residency before domicile is established and those which require such residency after domicile has been established.

Plaintiffs also rely on Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) and Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) to support their contention that the residency statute discriminates impermissibly against new domiciliaries. The fundamental distinction between those cases and the one before us, however, is that they involved statutes which imposed impermissible penalties on the fundamental right of individuals to interstate travel. They also concerned state limitations on the right of new residents to receive basic necessities of life (*Shapiro*—right to welfare assistance; *Maricopa*—right to medical care), or to exercise the fundamental right to vote *(Dunn)*. The Court in *Shapiro* expressly left open the question of the validity of waiting periods or residence requirements in relation to eligibility for tuition-free education. *Shapiro, supra,* 394 U.S. at 638 n. 21, 89 S.Ct. 1322.

The Colorado statute under consideration does not operate to deny an individual the right to travel interstate and set up residence in another state. It simply requires that an individual who desires to attend a Colorado state-supported college or university must live in Colorado for at least one year after establishing domicile before he may be allowed to pay the lower tuition rates extended in-state residents. An individual is not denied the right to attend a state university nor to move to Colorado for such a purpose; the statute requires only that he must pay the full cost of his educa-

tion at such university until he has demonstrated a sincere desire to make Colorado his home or he may wait one year after demonstrating such intent to attend a university at reduced tuition. The residency requirement does not involve the risks inherent in denying an individual the right to state-supported public assistance or medical treatment. The non-resident student merely pays out-of-state tuition for one year after establishing domicile in Colorado as a requisite for in-state lower tuition.

■ While higher education is unquestionably important, we note that there is no fundamental or constitutional right to that education. San Antonio Independent School District v. Rodriguez,[3] 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

The statute is reasonably related to a legitimate purpose of the state in attempting to distinguish those students who are in Colorado solely for educational purposes from those who intend to remain in Colorado.

Plaintiff also argues that the waiting period in actuality does not further the purpose asserted by the state of distinguishing between bona fide Colorado domiciliaries and others. Plaintiff points out that a student who is establishing domicile solely for the purpose of obtaining lower tuition rates is just as likely to remain in Colorado for one year as a true domiciliary. Plaintiff contends that the state has other means of determining fraudulent domiciliaries without penalizing new domiciliaries.

Plaintiff's argument may be true in certain instances; however, we agree with defendants that the Colorado statute is more likely than not to distinguish between true domiciliaries and other students and thus satisfies the rational basis test. It may well be impossible to establish standards which would completely differentiate between domiciliaries and non-domiciliaries in all cases; however, we conclude that the state has sufficiently demonstrated a rational basis for the statute to withstand constitutional attack. The state has a legitimate interest in requiring bona fide domicile of a student before allowing that student to benefit from state-subsidized education. The statute is reasonably related to that purpose.

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Court stated:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice its results in some inequality." Id. at 485, 90 S.Ct. at 1161, quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 55 L.Ed. 369 (1911).

Plaintiff contends that the reasoning asserted by defendants to support the purpose of distinguishing between bona fide domiciliaries and others is not rational. For, plaintiff argues, if a student has established Colorado domicile, then a determination has already been made that he has the intention of remaining in Colorado. See C. R.S. 124–18–2(3) (1963). Thus, to require a year of residency after such a determination in order to show intention to remain here for tuition purposes is irrational. We view the one-year domiciliary durational requirement in a different context. By requiring an individual to maintain his Colorado domicile for one year, the state is requiring that

---

3. In *Sturgis* (1973) the Washington federal court also noted that education is not a fundamental right; further, the court ruled that *Rodriguez* added persuasive support to the distinction *Starns* had made between litigation involving non-resident tuition and suits involving welfare matters.

person to give up his domicile and rights attendant thereto in any other state. We believe that the one-year residency requirement is a reasonable attempt by the state to deal with a problem replete with the possibility of abuse.

We conclude that the statute does bear a reasonable relation to the state's asserted purpose in distinguishing bona fide domiciliaries from those who establish domicile solely to obtain the benefits of lower tuition rates at state colleges and universities.

## IS COST EQUALIZATION BETWEEN DOMICILIARIES A CONSTITUTIONALLY PERMISSIBLE BASIS FOR CLASSIFICATION BETWEEN NEW AND OLD DOMICILIARIES?

Plaintiff relies on *Shapiro, Vlandis,* and *Maricopa, supra,* to support his conclusion that cost equalization between new and old domiciliaries is an impermissible basis for the classification in the statute. Those cases indicate that proportioning state benefits on the basis of length of residence is impermissible. Again, however, we note that *Shapiro* and *Maricopa* involve denial of any access whatsoever to benefits essential to life and also penalized the right of interstate travel—considerations which are not present here.

In dealing with this issue in *Maricopa,* the Court emphasized that cost equalization is not a proper basis for classification when such classification involves the fundamental right to travel or invidious discrimination:

> [A] State may not protect the public fisc by drawing an invidious distinction between classes of its citizens [citing *Shapiro*] . . . . The conservation of the taxpayers' purse is simply not a sufficient state interest to sustain a durational residency requirement which, in effect, severely penalizes exercise of the right to freely migrate and settle in another State.

[citations omitted] *Id.* 415 U.S. at 263, 94 S.Ct. at 1085.

Thus *Maricopa* is not helpful to plaintiff in this litigation.

While a reference in *Vlandis, supra,* 412 U.S. at 450 n. 6, 93 S.Ct. 2230, indicated that apportioning tuition rates on the basis of old and new residents would present problems under the Equal Protection Clause, that case did not rule on the issue. It is significant that the Court affirmed *Sturgis, supra,* which upheld cost equalization as a basis for a residency requirement after the *Vlandis* decision was issued. We also note the Court's statement in *Vlandis* that "[t]he State's objective of cost equalization between *bona fide* residents and nonresidents may well be legitimate." [emphasis supplied] *Id.* at 448, 93 S.Ct. at 2234.

We conclude that the state has a legitimate interest in reserving the right to attend a state university at a cost borne partially by state taxpayers to those who have contributed, directly or indirectly, to the state and those who may be expected to contribute to the state in the future. The statute provides the state with a reasonable waiting period in which it may charge realistic tuition to attempt to achieve partial cost equalization among students. *Sturgis, Starns, Kirk, supra.*

## DOES THE TWELVE MONTH DOMICILIARY REQUIREMENT IMPERMISSIBLY INHIBIT INTERSTATE TRAVEL?

The clear expression in *Shapiro* and *Dunn* held impermissible one-year durational residency requirements as inhibiting the right to interstate travel. These are welfare and eligibility to vote cases, and are distinguishable from college tuition controversies. We reject plaintiff's argument that higher out-of-state tuition inhibits interstate travel to Colorado.

As represented, about forty percent of the students at the University of Colorado are from out of state. Considering

the large out-of-state enrollment, it is apparent that interstate travel to Colorado is not adversely affected by higher tuition. Also we recognize that virtually every state has state-supported facilities for higher education.

## CONCLUSION AND ORDER

We conclude that the state has made a legitimate effort through C.R.S. § 124–18–2(2) (Supp.1967) to distinguish those students who are in Colorado solely to obtain an education from bona fide domiciliaries to whom it affords the opportunity to attend state universities at costs subsidized by Colorado taxpayers. While the statute may not always achieve such a purpose, the state has demonstrated a rational basis for it such as to withstand constitutional attack under the Equal Protection Clause of the Fourteenth Amendment. In dealing with a difficult area, Colorado has reasonably attempted through its legislation to distinguish those students who sincerely intend to remain in Colorado from those who do not in order to give the former the opportunity to attend its institutions of higher learning on a subsidized tuition basis. Colorado is not penalizing the fundamental rights of new domiciliaries; the classification contained in the statute is reasonable in light of state interests.

The statute is also reasonably related to the legitimate interest of the state in ensuring that those who pay in-state tuition rates have made and will make some contribution to the state before entitlement to in-state student status.

Accordingly, we find that C.R.S. § 124–18–2(2) (Supp.1967) is constitutional; it has a rational basis and is reasonably related to legitimate state interests. Therefore

It is hereby ordered that Plaintiff's Motion for Summary Judgment is denied, and Plaintiff's requested relief denied; further that Defendants' Cross Motion for Summary Judgment is granted. Judgment will enter for Defendants.