George W. FRAME and Lory Herbison Frame, Plaintiffs and Appellants,

v.

RESIDENCY APPEALS COMMITTEE OF UTAH STATE UNIVERSITY, Claude J. Burtenshaw, Chairman, and Evan J. Sorenson, Assistant Director of Admissions and Records, Defendants and Respondents.

No. 18097.

Supreme Court of Utah.

Nov. 25, 1983.

Lisa J. Remal, Ogden, for plaintiffs and appellants.

David L. Wilkinson, Atty. Gen., Salt Lake City, Michael D. Smith, Asst. Atty. Gen., Logan, for defendants and respondents.

STEWART, Justice:

Appellants are out-of-state students who were denied resident status for tuition purposes by Utah State University.[1] After the University's denial, appellants filed this suit. They challenge the constitutionality of the rules by which the University determines residency, and allege that the University's decision was arbitrary and capricious. On cross motions for summary judgment, the trial court upheld both the rules and the University's decision. We affirm.

The parties agree, as evidenced by their motions for summary judgment, "that there is no genuine issue as to any material fact." Utah R.Civ.P. 56(c). Appellants George and Lori Frame met and were married in California in 1970 or 1971. At that time, George was temporarily stationed by the military in California, and Lori was a resident of California. Prior to being stationed in California, George had been a resident student in Alaska.

In the spring of 1971, the couple moved to Logan, Utah, and George Frame immediately enrolled at Utah State University. The Frames allege that during the next year they rented an apartment in Logan, opened an account with a local bank, registered to vote in Utah, and George obtained a Utah driver's license. During that year appellants did not apply for resident status at the University.

In June, 1972, appellants moved to Tanzania, Africa, to do wildlife research for thesis and dissertation requirements at

---

1. In some contexts the terms residence and domicile have different meanings, but for the purpose of this opinion we will treat them synonymously.

Utah State. While in Tanzania appellants opened a bank account there, but stored some of their personal belongings in Utah and gave as their mailing address the Cooperative Wildlife Research Unit at Utah State.

In February, 1978, appellants returned to Logan. In March, 1978, both appellants registered at Utah State for classes beginning the following September. From March to September, 1978, appellants spent most of their time outside Utah visiting their families and traveling through several states to further their employment as lecturers, free lance writers, and photographers. During this time appellants continued to store some belongings in Utah; they listed the Wildlife Science Department as their mailing address; and George obtained a New Jersey driver's license.

In September, 1978, appellants returned to Logan to recommence their schooling. They again rented local living quarters, opened a local bank account, registered to vote, and George obtained a Utah driver's license and automobile registration.

Toward the end of that month appellants applied to Evan J. Sorenson, the Assistant Director of Admissions and Records, for Utah resident status so that they might pay the lower Utah resident tuition. Applying the State Board of Regents' rules governing residency for tuition purposes, Sorenson ruled that appellants did not qualify for resident status because they had not lived continuously in Utah for one year prior to the quarter for which resident status was sought, and because they had come to Utah primarily to attend an institution of higher learning, and could not demonstrate by objective facts that Utah was their domicile. Appellants appealed that decision to the University's Residency Appeals Committee, which affirmed Sorenson's decision for essentially the same reasons.

In April, 1979, appellants again applied for resident status on the ground that over one year had elapsed since their March,

1978, registration at the University. Because appellants had been absent from the state for more than thirty days during the summer of 1978, Sorenson again denied their request on the ground that appellants had not resided continuously in the state for one year. On appeal, the Residency Appeals Committee affirmed.[2]

Having exhausted their administrative remedies, appellants filed suit in the district court in August, 1979, to compel the University to classify them as residents for tuition purposes. Appellants argue that it is a violation of due process and equal protection to deny resident status to them because they were absent for more than thirty days during the one-year period. Appellants also contend that the University's reliance on their acceptance of out-of-state, "nontemporary" employment and their failure to purchase property in Utah as indicia of intent to establish permanent domicile in the state, violates the Equal Protection Clause. Finally, they contend that the Appeals Committee decision should be reversed because it was arbitrary and capricious.

## I. REGENTS' RULES

U.C.A., 1953, § 53–34–1 authorizes the Board of Regents to charge higher college tuition to nonresident students than to resident students. Section 53–34–2.2 defines "resident student" for tuition purposes:

(1) The meaning of the word "resident" for the purposes of this act shall be determined by reference to the general law on the subject of domicile, except that the following rules shall be observed:

(2) An adult who has come to Utah and established residency here for the purpose of attending an institution of higher education must maintain continuous Utah residency status for one full year prior to the beginning of the academic period for which registration as a resi-

---

**2.** During the summer of 1979 appellants again left Utah to travel through other parts of the country in furtherance of their employment as free lance writers and photographers. They planned to return to Utah in September, 1979.

dent student is sought, and, in each case, must demonstrate by additional objective evidence the establishment of a domicile in Utah and that the student does not maintain a residence elsewhere.

Pursuant to subsection (7) of this section, the State Board of Regents has promulgated supplementary rules and regulations to assist institutions of higher education in classifying students as residents or nonresidents.[3] Appellants challenge the constitutionality of these rules, which closely parallel the language of § 53–34–2.2. Rule I.A. sets forth the basic requirements for resident student status, including the statutory one-year residence requirement:

I.  ADULTS—(Married students and single students 18 years and over)

A.  In order to qualify as a resident student,

1.  an adult must establish by objective evidence an intent to establish a permanent domicile in Utah; and

2.  an adult student who has come to Utah for the primary purpose of attending an institution of higher education must reside in Utah for at least one continuous year prior to the beginning of the academic period for which registration as a resident student is sought.

Rule I.D. permits a thirty-day absence from the state without disqualifying a student from complying with the one-year residency requirement. That rule states:

D.  *Year's Continuous Residency*

A person who lives in the state for one year will not qualify as a resident unless the other requirements of paragraph A are satisfied. Short absences from the state, i.e., less than 30 days, will not break the running of the required one-year residence. Extended absences, i.e., longer than 30 days, especially if during such an absence the student works out of state or returns to the prior home of record for an extended duration, will break the running of the continuous year.

It is established law that a state may charge a higher tuition for nonresident students. *E.g., Hasse v. Board of Regents,* 363 F.Supp. 677 (D.Hawaii 1973); *Clarke v. Redeker,* 259 F.Supp. 117 (S.D. Iowa 1966). It is also established that a one-year period of residency may be imposed to qualify for resident tuition. *Starns v. Malkerson,* 326 F.Supp. 234 (D.Minn.1970), *aff'd,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971); *Sturgis v. Washington,* 368 F.Supp. 38 (W.D.Wash. 1973), *aff'd,* 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973).

Appellants do not attack any of the above propositions. Rather, they focus their challenge on the rule which precludes the establishment of residency if a student is absent from the state more than thirty days during the one year. They assert (1) that the thirty-day rule irrebuttably presumes, in violation of due process, that students who must travel outside the state for more than thirty days at a time are nonresidents; and (2) that the rule violates equal protection because there is no rational basis for distinguishing nonresident students who travel outside the state for more than thirty days from resident students.

## II.  DUE PROCESS

Rule I.A.1 requires that an adult seeking to qualify as a resident student "must establish by objective evidence an intent to establish a permanent domicile in Utah." The evidence of permanent domicile may include evidence of any of the several factors listed in Rule I.E.,[4] which

---

**3.**  Subsection (7) of § 53–34–2.2 states:

The board of regents after consultation with the institutions of higher education shall make rules and regulations, not inconsistent with the provisions of this section, concerning the definition of resident and nonresident students and establishing procedures for classifying and reclassifying students and criteria for judging claims of residency, domicile, emancipation, abandonment and other matters related to this section.

**4.**  Rule I.E. describes the type of evidence relevant to a determination of residency. It states:

An applicant for resident status must furnish evidence of personal intent to remain indefinitely by establishing significant legal and

are typically utilized in determining domiciliary status. If, however, an adult comes to Utah primarily for the purpose of attending an institution of higher education, he is presumed to be a nonresident. As to such a person, Rule I.A.2 imposes the additional requirement that he establish one year's continuous residency prior to the academic year for which he applies for residency status. Because of the difficulty in determining a student's domiciliary intent when he applies for residency after coming to this state for the purpose of attending an institution of higher learning, the law establishes a rebuttable presumption that a person who enrolls in college "within a year after entering Utah from out of state" has entered the state primarily for academic reasons and therefore lacks domiciliary intent. Rule I.C.[5] This presumption may be rebutted either through one continuous year of residence or by "[clearly demonstrating] that the move to Utah was not academically motivated." *Id.* Rule I.D. provides that short absences from the state of not more than a total of thirty days do not disqualify one from meeting the one-year requirement.

Appellants contend that the thirty-day rule creates an irrebuttable presumption of nonresidence in violation of *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). That case ruled that

where a state is concerned with the factual question of residency, the state may not make the determination of the question turn on a permanent irrebuttable presumption. The Court held a Connecticut law unconstitutional which provided that (1) a student was presumed to be a nonresident for tuition purposes if his "legal address for any part of the one-year period immediately prior to his application for admission" to the state university system was outside the state, and (2) that a student's status "as established at the time of his application for admission ... [was, as a matter of law, his] status for the entire period of his attendance at [school]." *Id.* at 442–43, 93 S.Ct. at 2231–32. In holding that the irrebuttable presumption violated due process, the Supreme Court stated:

> In sum, since Connecticut purports to be concerned with residency in allocating the rates for tuition and fees in its university system, it is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination. Rather, standards of due process require that the State allow such an individual the opportunity to present

---

other ties or contacts within the State of Utah during the year's required residence, and by terminating reasonably terminable ties out of state. *Significant ties and contacts may include, among other matters, the purchase of property; acceptance of non-temporary employment;* establishment of banking relationships; qualification for Utah driver's license; registration of a motor vehicle; registration to vote; membership and participation in off-campus political, social, religious, fraternal and civic associations; marriage to a Utah resident; or the existence of compelling non-academic reasons for coming to Utah and leaving the previous domicile, such as health needs, divorce, or offer of permanent employment. The following factors may be grounds for denying resident status:
1. Out-of-state voter registration
2. Out-of-state motor vehicle registration
3. Out-of-state driver's license
4. Out-of-state support to such an extent that the student would probably have to leave the

State of Utah if that support were withheld. [Emphasis added.]

5. Rule I.C. states:
   *Motivation*
   The law presumes temporary academic motivation, and thus lack of domiciliary intent, in the case of persons who within a year after entering Utah from out of state, enroll in an institution of higher education in this state. This presumption is reinforced if the student has applied to a Utah college or university from an out-of-state address or immediately after entering the state and the entry into the state shortly precedes or coincides with the commencement of a school term. It is the student's obligation to rebut this presumption in order to qualify for resident status. A student who clearly demonstrates that the move to Utah was not academically motivated, but was for permanent domiciliary reasons, is entitled to immediate resident status.

evidence showing that he is a bona fide resident entitled to the in-state rates. Since [the law] precluded the appellees from ever rebutting the presumption that they were nonresidents of Connecticut, that statute operated to deprive them of a significant amount of their money without due process of law.

*Id.* at 452, 93 S.Ct. at 2236.

*Vlandis* does not control the instant case. The law that *Vlandis* invalidated established an irrebuttable presumption of nonresidency that lasted the entire period that a student attended school.[6] Under Utah law, by contrast, an out-of-state resident may, at any time after his arrival in the state, establish himself as a bona fide resident or domiciliary of the state by overcoming the rebuttable presumption of nonresidency. In this case, appellants could, by living continuously in the state for one year and by meeting the other tests for determining domicile, establish themselves as residents.

■ The requirement that the one year may not be interrupted by more than thirty days of absence is not prohibited by *Vlandis*. Since a flat one-year presumption of nonresidency is valid, *Starns v. Malkerson*, 326 F.Supp. 234 (D.Minn.1970), *aff'd*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971); *Sturgis v. Washington*, 368 F.Supp. 38 (W.D.Wash.1973), *aff'd*, 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464

(1973), it follows that the thirty-day grace period must necessarily be valid.

## III. EQUAL PROTECTION

### A.

■ Both appellants and the University agree that the thirty-day rule neither jeopardizes a fundamental right nor creates a suspect classification. Therefore, equal protection of the laws requires only that the classification created by the rule bear a rational relationship to a legitimate state purpose. *E.g., San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Baker v. Matheson*, Utah, 607 P.2d 233 (1979); *Purdie v. University of Utah*, Utah, 584 P.2d 831 (1978). Since the Board of Regents may legitimately distinguish between residents and nonresidents by charging the latter a higher tuition, and may also impose a one-year residency requirement to assist in making that distinction, *see Starns v. Malkerson, supra*, at 236–37, the issue is whether the state, in determining whether the one-year requirement has been met, may rationally distinguish between students who reside outside the state for a period of more than thirty days during the one year, and those who do not.

6. The rationale of *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), was limited in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which upheld a rule requiring spouses to be married for nine months before a widowed spouse could claim social security benefits based on the marriage. The court upheld the time limitation and held that a factual determination into the bona fides of the marriage need not be undertaken in each case to determine eligibility for social security benefits. *Salfi* rejected the requirement in *Vlandis* that legislatively-created irrebuttable presumptions must be "necessarily or universally true in fact," *id.* at 768, 95 S.Ct. at 2468, and limited *Vlandis* "to those situations in which a State 'purport[s] to be concerned with· [domicile, but] at the same time den[ies] to one seeking to meet its test of [domicile] the opportunity to show factors clearly bearing on that issue,'" *Elkins v. Moreno*, 435 U.S. 647, 660, 98 S.Ct.

1338, 1346, 55 L.Ed.2d 614 (1978), *quoting Salfi*, 422 U.S. at 771, 95 S.Ct. at 2469. *Salfi* follows traditional equal protection analysis in dealing with a rule of law based on a factual assumption that may be false in a given case. In *Salfi*, the Court stated:

[T]he benefits here are available upon compliance with an objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility. Like the plaintiffs in *Starns* [*v. Malkerson*, appellants] are completely free to present evidence that they meet the specified requirements; failing in this effort, their only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test.

*Salfi* at 772, 95 S.Ct. at 2470.

■ Appellants contend that their education-related research and temporary employment are legitimate reasons for extended absences from the state, and that it is "unfair [and] totally illogical to strip all persons who leave the state for more than thirty days of resident student status." The argument is not valid. It is not the thirty-day absence rule that precludes residency status; it is appellants' failure to rebut the presumption of nonresidency arising from a failure to establish physical presence in the state for one year (less a thirty-day grace period).

■ Under Rules I.A. and I.D., appellants' motivation for leaving the state each summer is immaterial. Although motivation may be relevant in determining residency or domiciliary status in a different context, the purpose of the instant rules is to distinguish between those whose attachment to the state is sufficient to justify charging resident tuition and those who have a lesser detachment and are therefore less likely to contribute to their tax-subsidized education by the payment of taxes. In establishing general rules for distinguishing between residents and nonresidents for tuition purposes, the state must be reasonable in the classifications created by the rules. The classifications in this case rationally distinguish between those who come to this state solely for attendance at an institution of higher learning during the school year, and those who come with the intention of residing here for purposes other than enrolling at a state educational institution for an indefinite period of time.

■ The authority to draw lines that discriminate is necessary if government is to act in the many areas of human conduct where the shades of human activity do not lend themselves to precise categories. When some legislative line must be drawn, it is no objection to the rule that some cases will fall closer to the line than others and thus may individually have more merit and greater claim to being treated differ-

ently than those that fall farther away. That objection will exist in virtually all cases. Such a determination provides no basis for holding a rule unconstitutional as long as the classifications are reasonable. *Baker v. Matheson, supra.*[7] The classification in this case is rationally based and imposes no invidious discrimination, even though the lines drawn by the rules may traverse gray areas. *See generally Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ Appellants would also have us alter the thirty-day rule to allow tacking of twelve nonconsecutive months of residency. This Court has no such power. The prerogative and power to draw such lines belongs to bodies invested with the power to legislate or to make rules under legislative authority.

■ In sum, the thirty-day rule as written does not unlawfully discriminate and is not unconstitutional.

### B.

Appellants also contend that the University's reliance on "nontemporary" employment and the purchase of property in Utah, as indicia of intent to establish permanent domicile, is a violation of equal protection. These two factors are among several set forth in Rule I.E. of the Board of Regents' rules. *See* footnote 4. The specific issue here is whether these factors are reasonably indicative of domiciliary intent.

Appellants cite *Kelm v. Carlson,* 473 F.2d 1267 (6th Cir.1973), to support their argument that nontemporary employment may not be considered in determining domiciliary intent. *Kelm* invalidated a university regulation that required acceptance of post-graduate employment within the state in order to acquire resident-student status. Under the rules in the instant case, acceptance of nontemporary employment, before or after graduation, is not a requirement for resident status, but only one of several

---

**7.** We do not deal here with strict scrutiny cases.

criteria to be considered in determining "personal intent to remain indefinitely." Rule I.E., footnote 4, *supra*.

Both employment and acquisition of property may provide some evidence of intent to remain indefinitely. Of course, a student with no actual intent to establish residency might purchase a home and obtain apparent permanent employment. Since, however, such actions are not likely taken solely to establish resident-status for tuition purposes, those factors have traditionally been used in determining whether one has an attachment to the state that is indefinite in duration and hence indicative of domiciliary intent. *See, e.g., Vlandis v. Kline, supra*, 412 U.S. at 454, 95 S.Ct. at 2237; *Lister v. Hoover*, 655 F.2d 123, 126 (7th Cir.1981); *Hasse v. Board of Regents*, 363 F.Supp. 677, 679 n. 3 (D.Hawaii 1973); *Podgor v. Indiana University*, 178 Ind. App. 245, 381 N.E.2d 1274, 1279–80 n. 2 (1978).

■■■■ The Equal Protection Clause, in the circumstances of this case, requires only that similarly situated persons be treated similarly and that any differences in treatment be reasonably and fairly related to a legitimate governmental purpose. *See Weinberger v. Salfi, supra; Dandridge v. Williams, supra; Baker v. Matheson, supra*. Reliance upon employment and acquisition of property as evidence of one's intent to establish a domicile is not unreasonably related to the purpose of the statute.

## IV. REASONABLENESS OF THE UNIVERSITY'S RULING

■■■■ Finally, appellants argue that the decision of the Residency Appeals Committee denying them resident status was arbitrary and capricious. Both parties agree that our scope of review is whether the University acted arbitrarily or capriciously. Since neither party disputes that proposition, we shall assume that to be the proper scope of review.

■■■■ The Committee's decision was supported by substantial evidence.[8] Appellants first came to Utah in 1972, left in 1973, and returned in 1978, when they again enrolled as students at Utah State University. They applied for resident status in September, 1978, but clearly had not satisfied the one-year residency rule because of their sojourn of six years in Africa, followed by a summer of travel throughout this country. During the summer of 1978, George Frame held a New Jersey driver's license. When they reapplied in April, 1979, they still had not satisfied the one-year residency requirement and did not establish that this state constituted their domicile. The Cache County clerk's office had no record of appellants' having registered to vote or having voted by absentee ballot, as claimed in their application. When out of state, they gave as

---

**8.** The University cited the following reasons for the ruling that the appellants had not met the objective test of Section E of the regents' rule:

It would also appear that they had not met the requirement of showing objective evidence of intent to remain as described in Section E of the Rules and Regulations such as purchasing property, acceptance of non-temporary employment, or other evidences that would be of a nature to show that they in fact intended to remain in the State after graduation.

... While in Utah, the Frames gave their residence address as the home of a professor who was out of town. It was therefore assumed that that was a temporary residence for the Frames. They gave as their permanent address the Department of Wildlife Science, Utah State University. Therefore, Mr. Sorenson saw no permanent residence ties to the State other than the University, which was for academic purposes. The Cache County Clerk's Office had no record of them being registered to vote or voting absentee as they claimed in their residency application. They also did not have a Utah drivers license nor a car registered in the State. When not enrolled at the University, Mr. Frame was doing research, lecturing, and consulting in Tanzania, Kenya, California, New Jersey, Pennsylvania, Washington, D.C., and New York, and he had not resided in the State for one continuous year at the time of their application. They had periodic absences from the State, usually in the amount of more than 30 days, which negated continuity in the State. Also, there was not [a] record that Mr. and Mrs. Frame had ever filed a Utah State Income Tax Return.

their permanent address the Department of Wildlife Science. They did not have a Utah driver's license or car registered in their name in this state, and there is no record that they had ever filed Utah State income tax returns.[9] It may be that the Committee could have ruled the other way, as the dissent contends it should have, but the ruling was not arbitrary or capricious.[10]

Affirmed. No costs.

HALL, C.J., and OAKS, J., concur.

HOWE, Justice (dissenting):

I dissent. The appellants proffered substantial evidence (most of which was not controverted by the University) that they had been Utah residents since 1971. It was therefore error to grant summary judgment against them. I would reverse for an evidentiary trial on the question.

The University in denying their application gave as its reasons that appellants had not complied with Rules I.D. and I.E. As I will attempt to demonstrate, those rules are flawed because they introduce as tests of residency factors which cannot be properly relied upon to deny a student residency status.

## I. RULE I.D.

The Board of Regents in promulgating Rule I.D. seriously deviated from the authority given to it by the Legislature to promulgate supplementary rules and regulations to assist institutions in classifying students as residents or non-residents. Contrary to the statement in the majority opinion, Rule I.D. does not "closely parallel" the language of § 53–34–2.2. It is at odds with that section. Moreover, Rule I.D. cannot be lightly dismissed, as does the majority opinion, by characterizing its effect as "simply provid[ing] some reasonable flexibility to the one year rule."

I have no quarrel with the statement in Part I of the majority opinion that a state may charge higher tuition for non-resident students than it does for resident students and that it may require a student to be a resident for one year before he qualifies for the lower rate. The cases cited there support that proposition. However, none of them deal with the problem now confronting us, which is whether absence from the state for more than 30 days necessarily breaks the running of the continuous one year residency period.

The basic error of the majority opinion is that it misperceives the meaning of § 53–34–2.2 which defines a "resident" student. The majority opinion erroneously ascribes to that section the requirement that the student must physically remain within the borders of Utah for one year to qualify. On the basis of that erroneous interpretation, the majority opinion then justifies Rule I.D. as an "amelioration" of the stringent one year requirement by extending the student 30 days of grace. I do not agree with that analysis.

Section 53–34–2.2 is very explicit in its direction as how to determine whether a student is a "resident" for tuition purposes. Subsection (1) directs that the meaning of the word "resident" shall be determined by reference to the "general law on the subject of domicile." Subsection (2) adds three requirements, however, which must be observed in so doing:

> An adult who has come to Utah and established residency here for the purpose of attending an institution of higher education (1) must maintain continuous Utah *residency status* for one full year ... and ... (2) must demonstrate by additional objective evidence the establishment of a *domicile* in Utah and (3) that the student does not maintain a residence elsewhere. [Italics and numbers added.]

Subsection (7) authorizes the Board of Regents to make rules and regulations *"not*

9. See footnote 8, supra.

10. The main thrust of the dissent is that the regents' rules depart from § 53–34–2.2, the statute which authorizes the rules. We have not addressed that issue because neither party has raised it. Accordingly, the issue is not before the Court.

*inconsistent with the provisions of this section"* concerning the definition of resident and non-resident students, and establishing procedures for classifying and reclassifying students and criteria for judging claims of residency, domicile, emancipation, abandonment and other related matters. In my view, Rule I.D. is inconsistent with the statute in that contrary to subsections (1) and (2) it introduces an additional and arbitrary requirement, viz., that a student may not leave the borders of the state, irrespective of his intent in so doing, for more than 30 days without losing his Utah residency. This requirement is imposed even where the student leaves in order to work during summer vacation.

A. Certainly there is nothing in the "general law on the subject of domicile" which subsection (1) directs us to follow that would give basis for such a rule. Under the general law on the subject of domicile, an adult couple, such as the appellants here, who leave the state during the summer to lecture and to collect materials and photographs in pursuit of their vocation but always maintain the intent to return for the resumption of school in the fall, would not lose their residency status. In 25 Am.Jur.2d Domicil § 31 (1966) it is written:

> A domicil, once established, is not lost by by an absence from it for months or even years, for the purpose of business or pleasure or the like, if during such absence there exists an intent to be absent merely temporarily and an intent to resume residence in the place of domicil following the completion of the purpose of the absence. [Citing cases.]

It should be emphasized that in the instant case we are not dealing with a student who is single, who has never severed ties with the home of his parents, who comes to Utah for the school year and returns home during the summer vacation. We have here students who are a married couple. Years ago each of them left the state where his (or her) parents reside. When they left Utah during the summer of 1978 it was not to return to be under the roof of the parents of either of them.

Rather, it was to travel in pursuit of earning their living. The appellants support themselves by their free-lance writing and photography. The fact that they may have visited Mr. Frame's parents briefly during the summer is inconsequential. They did not move back with parents nor did they move to a former residence of their own. The Restatement (Second) Of Conflict Of Laws, § 18 (1971) recognizes this critical distinction in Illustrations 13 and 14:

> 13. A, a young man aged twenty one, leaves his father's home to enter the X university. A returns to his father's home for vacations. These facts tend to show that A does not intend to make his home near the university and that his domicil remains unchanged.

> 14. A, a young man just graduated from college, definitely leaves his former home, marries and goes with his wife to state X where he enters a professional school. He takes a house there, intending to live there until he secures his professional degree. These facts tend to show that A intends to make his home in X and has acquired a domicil of choice there.

In sum, Rule I.D. does violence to the general law of domicile which as pointed out above is that a person does not lose his residency by being temporarily out of the state in pursuit of his employment or career when he intends to return to the state after that sojourn ends. Thousands of people, including lecturers, artists, entertainers and athletes spend many months away from their domicile without losing it. This principle has been recognized by our Legislature in respect to residency for voting purposes. In § 20–2–14(d) it is provided that:

> A person must not be considered to have lost his residence who leaves his home to go into a foreign country or into another state or precinct within the state for temporary purposes merely with the intention of returning; provided, he has not exercised the right to elective franchise in such state or precinct.

The Legislature has not shown any intent to deny resident students the same latitude and Rule I.D. should not be permitted to rob them of it.

B. Furthermore, Rule I.D. is inconsistent with subsection (2) which requires only the "residency status" or "domicile" to be maintained for one full year. (The two words are used interchangeably there). It does not state that the student must dwell in or have his abode in the state for one year, in which case it could be contended that he must remain within the borders of the state for that time. The statute clearly focuses on the *status* or *domicile* of the student, which is not affected by his temporary absence from the state while in pursuit of his career.

C. Rule I.D. also is out of harmony with subsection (2) because it provides for the loss of residency by a student who is outside the borders of the state even though there is no evidence that during that time he established residency outside of Utah. The appellants here have demonstrated that they do not maintain "a residence elsewhere" as the statute requires. The majority opinion has completely ignored this part of the statute and has failed to mention and give emphasis to the fact that there is no evidence whatever that the appellants had a residence elsewhere. If the appellants did in fact lose their Utah residency by being outside of this state for more than 30 days, then it follows that they had to establish a residency somewhere else. The Restatement (Second) Of Conflict Of Laws, § 19 (1971) states:

> A domicil once established continues until it is superseded by a new domicil.

Neither the University nor the majority opinion has suggested where the appellants' residency might have been. A person's residency cannot be floating but must be fixed at some location. Before it can be concluded that the appellants lost their Utah residency by leaving the state during the summer, it should be decided where their residency was during that period of time. Was it in New Jersey where Mr. Frame lived with his parents before 1964

and where the appellants spent part of the summer in a vacation cottage on the seashore? Was it in California where Mrs. Frame resided with her parents prior to her marriage? Was it in Alaska where Mr. Frame lived when he entered the Army?

## II. RULE I.E.

In addition to the fact that the appellants were not physically present in the State of Utah for 11 of the 12 months, the University gave as a second reason for denying their application "that they had not met the requirement of showing objective evidence of intent to remain in Utah as described in [Rule I.E.] such as purchasing property, acceptance of non-temporary employment or other evidences that would be of a nature to show that they in fact intended to remain in the state after graduation." The denial of appellants' application for this second reason is equally erroneous. In the first place, Rule I.E. does not require evidence that the student intends to remain in the state after graduation. Indeed, college graduates traditionally know that they must go where employment opportunities open. This applies to native born Utahns as well as to students who move here from out of state to attend a university such as the appellants. It cannot be seriously contended that this eventual possibility prevents them from being residents while they are here attending college. Restatement (Second) Of Conflicts Of Laws, § 18 (1971) states:

> To acquire a domicil of choice in a place, a person must intend to make that place his home *for the time at least.* [Italics added.]

In the comment which follows in the Restatement, it is stated that:

> If there is an intention to make a home *at present,* the intention is sufficient although the person whose domicil is in question intends to change his home upon the happening of some future event. [Italics added.]

As illustrations, the Restatement furnishes the following:

5. A, after graduation from college, leaves his father's house, teaches for several years and then comes to the law school of a university. His expenses are paid partly from his own money and partly from money borrowed from his father which he is under obligation to repay. He has a domicil in the university town if he intends to make his home there while attending the university.

6. A leaves his father's home, establishes another dwelling place, and earns his own living for several years. He comes to a university to attend the undergraduate department. He has a domicil in the university town if he intends to make his home there while attending the university.

We recently held in *Bustamante v. Bustamante*, Utah, 645 P.2d 40 (1982) that an alien who does not know whether he may be accorded the right to remain indefinitely or permanently in our country, may nevertheless establish the requisite residency necessary to bring a divorce action in this state. We stated that under those conditions the alien may have a dual intent—an intent to remain if that may be accomplished, and at the same time an intent to leave if the law so commands.

Furthermore, *Kelm v. Carlson*, 473 F.2d 1267 (6th Cir.1973) cited in the main opinion invalidated a university regulation that required acceptance of post-graduate employment within the state in order to acquire resident student status. Therefore, in my opinion the reliance of the University on the fact that the appellants had not shown evidence that they intended to remain in Utah after graduation was ill-placed and violated its own rule.

The only evidence proffered to the trial court as to the plans of the appellants after their graduation from the University came from the deposition of Mr. Frame, wherein he stated that he wanted to stay in Utah upon graduation and become employed as a wildlife ecologist and continue his free-lance writing and photography on the side. The University did not dispute this intent. It was therefore improper for the Universi-ty to deny appellants' application on the ground that they had not proved that they intended to remain in Utah after graduation.

The University's reliance upon the fact that the appellants had not accepted non-temporary employment in Utah is equally fallacious. The appellants are full-time students seeking to become wildlife ecologists. Until they finish their university work they do not intend to seek employment in that field. While students, they have chosen to be self-employed by their free-lance writing and photography. The University's insistence that they accept non-temporary employment by a Utah employer makes little sense in their case.

The remaining reason for the University's rejection of appellants' application was that they had not shown evidence that they had purchased "property." Rule I.E. does not specify what kind of property the student should purchase. It suffices to say that thousands of native born Utahns who have resided here all of their lives have not and do not own real property. No one can seriously contend that the lack of ownership of real property should be a disqualification to attaining residency. This test, like acceptance of employment from a Utah employer, is arbitrary and unreasonable.

### III.

Having answered the University's reasons for denying residency status to the appellants in Part I and Part II of this dissenting opinion, I turn to an analysis of the evidence proffered by the appellants to prove their Utah residency. The majority opinion does not seem to dispute that the appellants became Utah residents when they returned here from Africa in March of 1978 and registered at the University. From that month until September when their classes began, they were away from Utah. First, they delivered a lecture at the Philadelphia Academy of Natural Sciences. Following that, they spent time in New Jersey and Pennsylvania collecting materials and photographs of the animals of the Atlantic tidal marshes—something they

could not accomplish in Utah. Mr. Frame spent some time in the Philadelphia Academy of Natural Sciences researching materials on cheetahs for his Ph.D degree. During two of the months they lived in a seaside vacation cottage on the coastline in New Jersey.

Before returning to Utah to attend classes, they purchased an automobile which they drove here and registered here upon arrival. From 1971 to 1975, Mr. Frame had a Utah driver's license which expired while appellants were in Africa. He therefore obtained a temporary New Jersey driver's license in order to drive the automobile to Utah. The New Jersey license expired on October 23, 1978, at which time he acquired a permanent Utah driver's license.

The appellants claimed to have registered to vote in Utah in 1971, 1978 and 1980 and to have voted by absentee ballot in either 1972 or 1976, and voted in person in 1978. They did not register to vote nor did they vote in any state other than Utah from 1971 to 1979.

Appellants continuously maintained a bank account in a Logan, Utah bank from 1971 to the present time. In addition, they claimed to have filed Utah State income tax returns for 1976, 1978 and 1979. (They were not required to file for the other years because of insufficient income). Except while they were in Africa, they have used no other address than their address at Utah State University since 1971. They likewise attended no other university during that period of time. Both of them deposed that they came to Utah in 1971 with the intent to live here primarily because of this state's wilderness areas. As heretofore noted in this opinion, there was no evidence that they had any ties to any other place. Mr. Frame deposed that he had not lived with his parents nor been dependent on them since 1964. He had obtained a B.S. degree from the University of Alaska and had worked in that state as an oceanographer until he was drafted into the Army. While stationed with the Army in California, he met Mrs. Frame; and,

following his discharge from the Army, they married and came directly to Utah. While the University did dispute the appellants' claim of voting and filing income tax returns, it proffered no evidence that since appellants arrived in this state in 1971 they have had a residency elsewhere. Nor did it proffer evidence of any other residency from March 1978 to March 1979, which is the crucial period here under examination.

Rule I.E. authorizes the University to deny residency status to a student who registers to vote out of state, registers a motor vehicle out of state, obtains an out of state driver's license or receives significant out of state support. The appellants did none of the above except that Mr. Frame obtained a temporary two-month New Jersey driver's license in order to drive his newly purchased automobile to Utah.

At the very minimum, appellants made a substantial showing that they meet most of the indicia of residency listed in Rule I.E. I would reverse the summary judgment and remand for a trial.

DURHAM, J., concurs in the dissenting opinion of HOWE, J.